STATE of Missouri, Respondent,

v.

Benjamin Jeal SMITH, Appellant.
No. 50200.

Supreme Court of Missouri.

Division No. 1.

Nov. 9, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Dec. 14, 1964.

Thomas F. Eagleton, Atty. Gen., George W. Draper, II, Asst. Atty. Gen., Jefferson City, for respondent.

Wayne H. Bigler, Jr., and James W. Singer, III, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellant.

HOLMAN, Judge.

Charged by indictment with the offense of murder in the second degree defendant, Benjamin Jeal Smith, was found guilty and his punishment fixed by the jury at imprisonment in the penitentiary for a term of fifteen years. See §§ 559.020 and 559.-030 (all statutory references are to RSMo 1959, V.A.M.S.). He has appealed from the judgment and sentence.

At about 9 o'clock p. m. on October 19, 1962, Otha Lee Brown was standing on the sidewalk in front of Floyd's Tavern, 5538 Vernon, in St. Louis, Missouri. He had a bottle of beer in his right hand and was talking to a passenger seated in an automobile parked in front of the tavern. Suddenly there were five shots which appeared to come from the rear of the car, in the vicinity of Arcade Street. As the shots were fired Brown turned to his left toward the direction from which the shots came. He then staggered around toward the front of the automobile and fell, face down, in the street. A pool of blood collected near his body and one of the eyewitnesses testified that he saw "the man laying down there dead." Within a short time a number of police officers arrived, and as Officer Mohrman placed Brown on a stretcher, a small caliber pistol fell from the clothing on the upper part of Brown's body. The gun was delivered to another officer. Mohrman proceeded immediately to take Brown to City Hospital No. 2 and, shortly thereafter, took Brown's body to the city morgue where it was identified by his widow an hour or so later.

Two days thereafter police officers John Van Hook and Roy Miller arrested the defendant and questioned him at the police station concerning the death of Brown. At that time defendant made an oral statement in which he stated that in the early evening of the day in question he was engaged in a dice game on the street in the area of Arcade and Vernon Streets; that Otha Brown accused him of taking a dollar from him, and when he refused to give Brown a

dollar Brown walked to his automobile and obtained what appeared to be a gun; that he then returned to the game where he struck the defendant and snatched a dollar out of defendant's hand; that defendant then left the area and as he ran through an areaway Brown pursued him, and defendant heard what sounded like a shot from a gun. Defendant further stated that he went to his home where he remained about thirty minutes and obtained a gun which he placed in a paper sack and carried under his arm as he left; that he stopped by the house of one Don Holmes and while there talked with a fellow named Love who had been in the dice game, and Love informed him that Brown had said he "was sorry for what he had done and would give [defendant] back his dollar whenever he saw him"; that defendant then proceeded to Floyd's Tavern where he saw Brown standing by the automobile and, in order to get Brown's attention, said "Hey," and Brown turned around and appeared to be reaching in his trousers pocket or waistband; that he, believing that Brown was trying to get his gun, pulled his revolver out of the paper sack, pointed it in the direction of Brown, and fired until all of the loaded cartridges were used, which was five times; that after firing the shots he ran west across Arcade and then walked south on Goodfellow until he reached the Hodiamont car tracks where he boarded an eastbound streetcar. He rode the streetcar to Broadway Avenue, left the car and walked to the McKinley Bridge, and continued walking east on the bridge about 450 feet to a point where he threw the gun, still wrapped in the paper sack, over the north side of the bridge.

Defendant testified in the case but his testimony will not be stated herein because it is substantially the same as the statement he made to the police.

The State called as a witness Dr. John J. Thomas who testified that he was the pathologist for the coroner's office. He stated that when a body is taken into the morgue it is given a number and a name and the clerk puts the name on the body.

The witness produced the record in Case No. 2483 which he stated was a record of the coroner's office which was kept in the regular course of the business of that office; that said case carried the name of Otha Lee Brown. Preliminary to making an objection, defendant's attorney elicited from the witness the fact that he had not known Otha Lee Brown and had no personal knowledge that he was the person named in the record produced. The court nevertheless admitted the record into evidence and the witness testified therefrom that he had conducted a post-mortem examination of the body of Otha Lee Brown at about noon on October 20, 1962. He related that an external examination showed two penetrating gunshot wounds in the chest and that one of the bullets was shown to have made an exit in the back; that as a result of the examination the witness had concluded that the cause of Brown's death was a gunshot wound of the heart.

The sole contention briefed by defendant is that "the State wholly failed to establish the corpus delicti by competent evidence."

"In every criminal case the corpus delicti must be proven." State v. Simler, 350 Mo. 646, 167 S.W.2d 376, 383. "In murder, the corpus delicti consists of two elements: (1) The death of the person alleged to have been murdered, and (2) the criminal agency of someone other than deceased causing the death." State v. McQuinn, 361 Mo. 631, 235 S.W.2d 396, 397.

We have concluded that there is ample competent evidence in the transcript to prove the corpus delicti, i. e., that on the occasion in question, Brown was shot and that he died almost immediately as a result of the gunshot wounds. Brown was identified by a number of eyewitnesses as the man standing beside the car. Shots were fired and he ran into the street and fell on his face. A large pool of blood immediately ran from his body. A witness stated, without objection, that Brown was then dead. A policeman took Brown's body to the hospital and almost immediately

**518**

thereafter conveyed it to the morgue where it remained. In our opinion those facts alone are sufficient to warrant a finding that Brown died and that his death was the result of the gunshot wounds.

Defendant, however, relying on a statement to that effect in State v. Simler, supra, says that the law demands that the corpus delicti must be proved by the best evidence which, in the nature of the case, is available. He contends that in the case at bar the best evidence of the cause of the death of Brown was the result of a postmortem examination; that there was no competent evidence concerning such an examination because there was no admissible evidence tending to prove that the body upon which Dr. Thomas performed the autopsy was the body of Otha Lee Brown; that the record produced by Dr. Thomas which showed that the autopsy was performed on the body of Otha Lee Brown was improperly admitted and thus the testimony of Dr. Thomas, based upon that record, was hearsay and should have been excluded.

 It is true that Dr. Thomas testified concerning the post-mortem examination by referring to and reading from the record he made at the time of said examination. We have concluded, however, that said record (State's Ex. 14) was properly admitted in evidence under the provisions of § 490.680 of the Uniform Business Records as Evidence Law. It was a record required to be kept by the provisions of § 58.451(2), and the testimony was that it was a record of the coroner's office kept in the regular course of the business of that office. In disposing of a similar contention we recently stated that "[i]n his capacity as pathologist and in making his post-mortem examination and report Dr. Connor was a public official. Supp. V.A.M.S., Sec. 58.451. Here the record of his examination was accounted for and identified as a record kept in the coroner's office and it is no longer a valid objection to this and similar reports that they are 'hearsay.' V.A.M.S., Sec. 490.680." State v. Cheatham, Mo., 340 S.W.2d 16, 19.

 We have concluded that the corpus delicti in this case was proved by an abundance of evidence which was properly admitted. The sole point briefed by defendant is therefore ruled adversely to his contentions.

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.