**STATE of Missouri, Respondent,**

v.

**Eugene FORD, Defendant-Appellant.**

No. 56286.

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

Motion for Rehearing or to Transfer to Court
En Banc Denied Nov. 13, 1972.

John C. Danforth, Atty. Gen., Neil Mac-Farlane, Asst. Atty. Gen., Jefferson City, for respondent.

Robert C. Babione, St. Louis, for appellant.

**BARDGETT, Judge.**

Eugene Ford was charged by indictment with murder in the first degree of Nathaniel Pursley, Jr. A jury found him guilty as charged and assessed punishment at life imprisonment. Judgment and sentence were rendered accordingly, and following the overruling of his motion for new trial, Ford appeals. This Court has jurisdiction.

Art. 5 Sec. 3 Constit. of Mo. 1945 as amended 1970.

Four eyewitnesses testified in the State's case. The evidence can be summarized by quoting the testimony of the first witness for the State, a young man 15 years old, who testified that on October 3, 1969, at about 10:30 P.M. at Beckett Park, St. Louis, Missouri, he saw appellant Ford, Ronald Singleton, Giles Owens and Leon Jones seated on a bench next to the sidewalk at the side of the park. He saw three men walking along the park, one of whom was Nathaniel Pursley, Jr., the deceased. The lights were on in the park. When asked to tell the jury what Eugene Ford did, the witness stated: "Well, when Eugene Ford ran down for the men, Eugene ran toward one man, Mr. Pursley, and grabbed him and Eugene hit the man, knocked him down, and the other two men started hollering, 'Don't kill him. Don't kill him.' Eugene picked him up again, knocked him down. At that time Giles and Singleton and the rest of the boys had got down there so they started helping Eugene beat the man, so Eugene pulled out a knife and he stabbed the man and then the man fell to the ground, and so Eugene and Giles Owens picked the man up again and he hit him and the man fell back down and Eugene and the rest of the boys started stomping on him. Ron Singleton started stomping the man on the face and everything, then that's when Eugene gave Giles the knife and Giles stabbed the man one time. Then they all started stomping and beating on the man and the man was laying on the ground and then they broke off and ran."

Ronald Singleton, one of the boys involved, testified at first that he did not see Ford stab the deceased, but as the testimony proceeded it was developed that Ford told Singleton to testify that he (Singleton) did not see Ford do it. Thereafter, the witness testified that he saw Ford hit the man and knock him down. Ford then grabbed Pursley with his left hand and stabbed him with a knife with his right

hand. Ford then handed the knife to Giles and Giles cut Pursley with it. Singleton did not remember how many times Ford used the knife on Pursley, nor how many times Giles cut Pursley with it. Ford stabbed the man in the front or side of his body. Singleton hit Pursley in the face with his fist.

Another 15 year old boy testified that he knew Mr. Pursley and believed him to be about forty-nine years old. This witness testified he saw Ford running across the park with a knife in his hand. Ford "ran upon the man and grabbed him by his collar and hit him and knocked him down, then he did it again and started beating on him and stomping. Leon Jones ran down there with him and he was kicking him too. Then I saw Eugene grab the man's collar and take a knife and stab him in the stomach. * * *" Pursley did nothing to provoke the attack. The knife Ford had was like a "ladyfinger"—it was a long knife with a blade about seven inches long.

The fourth eyewitness, a 14 year old boy, testified he saw Ford run out to Pursley and throw him down in the grass. Ford then stabbed him, hit him, and stomped him and then gave the knife to Giles, who took the knife and stabbed Pursley and stomped him.

None of these witnesses were impeached in any material respect.

Defendant testified in his defense and stated that he had been in the park on October 3, 1969 and that he went up to the man and hit him on the jaw one time and left. He denied stabbing Pursley and denied any knowledge of a stabbing.

Officer Jerome Johnson arrived on the scene about 11:00 P.M. He found Pursley laying on the ground within the park with cuts about his face and he was bleeding from the stomach. He was unconscious. Pursley was taken to Homer G. Phillips Hospital and examined by a doctor in the emergency room. Pursley was still unconscious upon arrival at the hospital and the Officer stayed with him until Pursley died at about 12:15 A.M.

■ Appellant's first point on this appeal is that the trial court erred in permitting "the State to repeatedly inform the venire panel that appellant was being tried as an adult even though he was fifteen at the time of the incident alleged in the information."

During the voir dire examination of the panel the prosecutor told the panel that the defendant was fifteen years old at the time he was arrested preliminarily to asking the panel whether or not any of them, because of the age of the defendant, could not give the State or the defendant a fair and impartial trial. The age of the defendant was never put in evidence. Nevertheless, the question was a proper one, for it surely must be recognized that it would be difficult, if not impossible, for some people to convict a young person of murder in the first degree, particularly when the only punishments available were life imprisonment or, at the time of this trial, death. The point is overruled.

■ As part of this point, appellant complains that it was error for the court to allow the prosecutor during voir dire, to make repeated reference to the fact that the defendant was "being tried as an adult" and in telling the panel "the Court has directed that this defendant be tried as an adult." It is appellant's position that § 211.271(3) V.A.M.S., which became effective as part of the Juvenile Code of Missouri prior to this trial, prohibits any reference being made to prior Juvenile Court proceedings, and that the comments by the prosecutor would lead the jury to believe that defendant had been certified by the Juvenile Court for trial as an adult and, inferentially, that some determination as to his guilt had already been made.

There was no violation of § 211.271 V. A.M.S. here because nothing that was done in the juvenile court was used against the defendant in the trial of this cause. State

v. Arbeiter, Mo., 449 S.W.2d 627, is not applicable.

■ The statement by the prosecutor that "the Court has directed that this defendant be tried as an adult" is obviously incorrect and should not have been made. Although the action of a juvenile court in dismissing a petition under the provisions of § 211.071 V.A.M.S. has been frequently characterized as "certifying the juvenile for trial as an adult", or "ordering the juvenile to be tried as an adult" the characterizations are incorrect. All that the juvenile court can do under § 211.071 V.A.M.S. is to dismiss the petition which has the effect of relinquishing juvenile court jurisdiction over the juvenile. When this jurisdiction is relinquished the juvenile is subject to prosecution in the same manner that others may be prosecuted. Whether or not the prosecution is instituted however, is matter over which the prosecuting attorney or the grand jury has jurisdiction, but the court has no jurisdiction to institute the prosecution or to order that a person, against whom no indictment or information has been issued, to be tried at all. There is no good reason why any reference should be made to prior juvenile court proceedings, absent some exceptional circumstances, in a criminal trial. Nor does the use of the terminology that "defendant is being tried as an adult" serve any legitimate purpose in the voir dire examination in a criminal case when the defendant is a juvenile, as it may cause the jury to speculate on what the prior proceedings were or why he is being so tried, when that is not a matter for their consideration. In a close case statements such as those made during the voir dire examination here could constitute prejudicial error. Because of the overwhelming evidence of guilt in the instant case, we do not believe that the defendant was in any way prejudiced by the remarks referred to, supra, and consequently they do not constitute reversible error here. The point is overruled.

Appellant's second point is that the court erred in permitting proof of the cause of death to be shown in evidence by reading that portion of the Coroner's Records of the City of St. Louis that contains the report of the post-mortem examination performed by and signed by the coroner's physician, Dr. Criscione, on the grounds that the "cause of death" is an opinion, and not "a record of an act, condition or event", within § 490.680 V.A.M.S. (Uniform Business Records as Evidence Act), and on the further ground that appellant was thereby denied the right to be confronted by and cross-examine the witnesses appearing against him.

The authenticity and qualifications of the medical records of the deceased at Homer G. Phillips Hospital and the report of the coroner's physician on the post-mortem examination he performed under § 490.680 were stipulated to by the parties, with appellant reserving the right to make specific objections to particular parts of the records. The records of Homer G. Phillips Hospital were read into evidence without objection and showed a final diagnosis of multiple stab wounds and that the patient died 12:20 A.M. on October 4, 1969. The post-mortem examination report was read into evidence without objection, except for the following, "Cause of death—stab wound of aorta", to which appellant objected on the grounds set forth supra. The objection was overruled and that portion was also read to the jury.

■ The other portions, not objected to, revealed that the deceased has multiple stab wounds and one of them lacerated the aorta. The post-mortem examination report reflects a thorough examination of the deceased by Dr. Criscione. A proper expert medical opinion contained in a hospital record is admissible under § 490.680 V.A.M.S., supra, Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667, and there is no reason why the same should not be true of a post-mortem examination of the coroner's physician, which is required to be kept by the provisions of § 58.451(2) V.A.M.S. State v. Smith, Mo., 384 S.W.2d 516, 518.

The evidence of the stabbing, the testimony of Officer Jerome Johnson, who stayed with deceased for the short time that he was alive, the unobjected to evidence from the Homer G. Phillips records and the post-mortem examination showing in detail the presence and location of the stab wounds as well as identifying the organs that were lacerated, including the aorta, and the absence of even a suggestion that deceased died from causes other than the stab wounds, were, in our opinion, sufficient facts from which the jury could find that Pursley died as a result of the stabbing. State v. Smith, Mo., 384 S.W.2d 516.

The statement in the post-mortem, "cause of death—stab wound of aorta", was, in this case, at most cumulative. In fact, it does not appear that the cause of death was really contested, though the state, of course, had the burden of proof on the issues as part of making a submissible case. The court holds that the state sustained its burden of proof on the issue without the benefit of the isolated portion of the post-mortem to which objection was made.

It cannot be said that there are no cases where the right of confrontation would be denied when none of the witnesses having knowledge of the cause of death appear to testify. It is much better practice for the State to call the pathologist as a witness and not run the risk of a reversal on these grounds.

However, under the evidence in this case defendant's right to be confronted by his accusers was not materially denied and he was not prejudiced by the admission into evidence of the questioned statement. The point is overruled.

Appellant's third and last point is that the trial court erred in refusing a tendered plea of guilty to murder in the second degree and to refuse to render a judgment of imprisonment for fifteen years in accordance with the recommendation of the State at the time of the tendered plea, citing North Carolina v. Alford, 400 U.S. 25, 33, 91 S.Ct. 160, 165, 27 L.Ed.2d 162.

The record is completely devoid of any reference to any tendered plea. The charge was murder in the first degree. We go no further than to observe that a defendant does not have a right to compel the acceptance of a plea of guilty to a lesser charge than the one brought against him.

The judgment is affirmed.

All of the Judges concur.

## ON APPELLANT'S MOTION FOR REHEARING OR TRANSFER TO THE COURT EN BANC

PER CURIAM.

Appellant asserts, inter alia, that the facts relating to appellant's alleged tender of a plea of guilty to the lesser offense of murder in the second degree are part of the record on appeal in this case.

The transcript of the trial itself is devoid of any reference to any tendered plea. The motion for new trial alleges that the court erred in refusing to accept a plea of guilty to murder in the second degree. At the time the court overruled the motion for new trial, the court dictated its ruling into the record and the remarks of the court indicate that there was an effort to plead guilty to second-degree murder at some point during the trial. The court's remarks indicate that the plea to the lesser offense of murder in the second degree was refused because the appellant denied he stabbed the victim. The court's remarks do not set forth whether the charge had been reduced to murder second nor the position of the prosecutor with respect to the alleged tendered plea to murder in the second degree. The record on this matter is wholly insufficient to form a basis for holding that the trial court erred in refusing to accept the alleged plea to the lesser offense.

After the transcript on appeal was filed in this court, there was an affidavit signed by appellant's attorney filed here setting forth what appellant's attorney claims took place with reference to the alleged tendered plea of guilty. The affidavit was not agreed to nor concurred in by the state and did not constitute a stipulation nor does it suffice to supplement the record. Appellant supports his motion for rehearing with a document styled "Affidavit" which is the same as the original affidavit of defense counsel except that the latter document purports to be a stipulation whereas the former does not. Additionally, neither the first nor second affidavit has been agreed to by the state as accurately setting forth the alleged events and, therefore, cannot be considered as a supplement to the record on appeal.

In these circumstances the court cannot consider the point on this appeal and it is, therefore, overruled.

The other points asserted in appellant's motion have been considered and are overruled.

Appellant's motion for rehearing or transfer to the court en banc is overruled.