**STATE of Missouri, Respondent,**

v.

**Donald Albert HOOPES, Appellant.**

No. 58649.

Supreme Court of Missouri, En Banc.

March 8, 1976.

Gary R. Black, Sr., Flat River, for appellant.

Neil MacFarlane, Jefferson City, for respondent.

BARDGETT, Judge.

Defendant was convicted by a jury on a two-count information containing necessary allegations to bring it within the second offender act, section 556.280, RSMo 1969, with robbery in the first degree by means of a dangerous and deadly weapon, section 560.120, and in the second count with murder in the first degree, section 559.010. He was sentenced by the court to life imprisonment on the murder conviction and twenty-five years, consecutive, on the robbery conviction. The motion for new trial was overruled and defendant appeals.

This case presents an unusual factual situation not previously encountered in earlier cases bearing upon an accused's constitutional right to trial by jury and privilege against self-incrimination as affected by a written commitment to plead guilty or a confession given by the accused to his own attorney and filed in court where the plea of guilty was aborted and the commitment or confession was thereafter used as evidence against the accused in the trial of the case. Although original jurisdiction of this appeal in this court is somewhat tenuous, this court will retain and decide the case for the reasons stated in *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972). Cf. *State v. Thomas*, 529 S.W.2d 379 (Mo.1975).

The homicide allegedly occurred during the course of the robbery. On July 6, 1973, appellant was formally arraigned and, with counsel present, pled not guilty to both

counts. The cause was sent for trial on October 22, 1973, but was continued at defendant's request to the November term of court. Mr. McIlrath was retained to represent defendant sometime before October 22, 1973, and the previously appointed counsel was permitted to withdraw.

On January 16, 1974, an "Amended Second Offender Information" was filed which does not materially differ from the first information noted supra. The trial was set for January 28, 1974. On January 28, 1974, the case was continued to February 4, 1974, because defendant's attorney was engaged in trial elsewhere. On February 11, 1974, the trial began and after the jury was selected the prosecutor requested a conference with defense counsel and the court to "take up the matter of Hoopes's confession to robbery, which is part of the record." Defense counsel objected to the use of the document. This document was marked state's exhibit A, entitled "Affidavit and Plea of Guilty".[1] The accompanying is a document which reads as follows:

1. "MR. ROBERTS: The Exhibit, State's Exhibit A, which is now admitted into evidence

'STATE OF MISSOURI

COUNTY OF ST. FRANCOIS } SS

IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI.

STATE OF MISSOURI,
Plaintiff,

—vs—

DONALD A. HOOPES,
Defendant.

No. 4111–A

**AFFIDAVIT AND PLEA OF GUILTY**

Comes now Donald A. Hoopes after being duly sworn upon oath states that he is the defendant in the above entitled cause and is charged with first degree robbery and first degree murder.

That Robert A. McIlrath, Attorney of Flat River, Missouri, is the attorney of his own choosing.

That he has been informed that he is entitled to a trial by jury and as matter of fact the panel has been summoned to try his case on January 28, 1974. That he has also been informed that he has a right to be tried by this jury. That he has the right to subpoena witnesses in his behalf. That he can only be convicted if it is a unanimous vote by the jury that he is guilty of the crime charged. That he has the right to testify in his own behalf and call witnesses to do the same. That he has been further informed that any promises made to him by anyone are not binding upon the Court. That he further knows that in the charge filed against him it is alleged that heretofore he has been convicted, sentenced and served a sentence for the crime charged and that the Judge alone would determine the sentence to be given him if it was proven that the crime here charged was the second offense. That any promises made by the Prosecuting Attorney, his attorney or anyone else is not binding upon the Court. That the Judge and the Judge alone will fix and determine his sentence. That by signing this affidavit and plea, that he is, entering a plea of guilty to the charge of robbery and not first degree murder. That he is in fact guilty with David Wayne Martin of robbing Orris Oliver Baker of the funds and pistols, the personal property of Dr. Alfred Fleishman, and did deprive the owner of the use thereof by assisting in the taking of the property above described from Orris Oliver Baker who is now deceased.

I have read the foregoing consisting of two pages and state that the same is true.

I swear that I have not in any way been coerced to make this plea of guilty but it is done of my own free will and accord.

/s/ Mr. Donald A. Hoopes
　　　Donald A. Hoopes

ing cover letter from defendant's attorney was marked state's exhibit A–1.[2] Both exhibits were admitted into evidence and read to the jury over defendant's objection. The document had been forwarded to the trial court by defense counsel on January 28, 1974, under the cover letter dated January 27, 1974, which requested that it be filed in the case. Extensive discussion ensued in the conference.[3] The prosecutor stated

Subscribed and sworn to before me, a Notary Public, this 27th day of January, 1974.

/s/ Robert A. McIlrath
Notary Public

My commission expires: January 28, 1975.

WITNESS:
/s/ Herman Province Farmington, Mo.
/s/ Cliff L. Ketcherside Flat River, Mo.'

"And on the very botton in longhand is written:

'I understand this may be used against me in Court of law.

Mr. Donald Hoopes' "

2. "Exhibit A–1 is the stationery of Robert A. McIlrath, Attorney 403 High Street, Flat River, Missouri. Telephone GEneva 1–2522 Area Code 314, Box 164, Zip Code 63602.

'January 27, 1974

Hon. J. O. Swink, Circuit Judge, and Hugh Roberts, Prosecuting Attorney:

Enclosed you will find a statement under oath from Hoopes.

I want this filed as he has stated under oath it could be used in court.

Statement signed January 27, 1974, and signed by Hoopes.

Robert A. McIlrath' signature at the bottom."

3. "THE COURT: The first matter you wanted to confer with Mr. McIlrath was about what?

MR. ROBERTS: Oh, we can take it in almost any order. I imagine we ought to first take up the matter of Hoopes' confession to robbery, which is part of the record.

MR. McILRATH: Well, I thought you wasn't goin' to use that.

MR. ROBERTS: I won't use it against you, Mac. This is one of these times I'm going to have to make an apology to you.

MR. McILRATH: Well, I can't see that.

MR. ROBERTS: I hope you understand.

MR. McILRATH: I can't see that, because you back out, you say you wasn't gonna use that.

MR. ROBERTS: My client is the State of Missouri.

MR. McILRATH: I don't care if your client is the State of Missouri.

MR. ROBERTS: It is a statement made under oath.

MR. McILRATH: I know it's made under oath. We took it there so he couldn't back out. But, I certainly—You said you wouldn't use it and I depended on that. it on the grounds that we'd reached an Cause I had a time gettin' that to try to save us time, I'll tell you frankly that I did.

He said no and I'll just try it. He wouldn't do it on the Saturday evening. Then his folks talked to me and they did.

And, I'm certainly going to object to it.

MR. ROBERTS: On what grounds?

MR. McILRATH: I'm just going to object to understanding and that that was the reason I got it done.

And, of course, I told him the Judge didn't have to pay any attention to it. And, you told me you wouldn't use it; that's on what grounds.

THE COURT: Do you want it marked as an exhibit and make it as an offer?

MR. ROBERTS: Yes, sir.

MR. McILRATH: Well, I want to object to it, cause certainly that was the understanding we had.

MR. ROBARDS: Is that the original, Hugh?

MR. ROBERTS: That's a copy of the original. We request leave of Court to use a photostatic copy.

MR. McILRATH: Well, I'm going to object to it for the reasons heretofore stated.

I did put in there, because there's been times he talked about pleading guilty before

and he backed out, and he didn't back out. You're the one who backed out.

MR. ROBERTS: I'd like to make a record on the—

THE COURT: Go get the file. Are you sure it's in here, the original?

MR. ROBERTS: I mentioned it specifically to Doey Mell. I told her once a document was filed in the court record it could not be removed without this Court's permission.

THE COURT: Now, let's see, wait. This is a copy.

MR. ROBERTS: This is the original, which should have been filed.

THE COURT: The original, yes. The original is the one that should be marked. Excuse me. I thought the original would be here. That's the original. That's no copy.

MR. ROBERTS: That should have been put in the file also, I think.

THE COURT: Let that be marked then as A–1.

Now, do you have your objection in?

MR. McILRATH: You bet your life I have my objection in.

THE COURT: I mean is there more you want to add?

MR. McILRATH: You damn right I want to. When this case was set up and we were supposed to be over there on Monday to try it, and I wanted to save time and I—there was a promise by the Prosecuting Attorney that he'd dismiss the charge of murder if, I could, uh, get this statement. And, I didn't want him backin' out any more like he had two or three times he'd gone in there, because he'd refused on Saturday to give a statement. And, it was my understanding, and, with all fairness to everybody, so it wouldn't pass another term, there'd be no way for him delaying it out, the term, that I did this. And it was done on the, on the recommendation, I mean on the recommendation it'd be let him enter a plea.

And I think it's, I just think it's outrageous, that's just exactly what I think.

THE COURT: Well, I think I'll have to overrule the objection in view, assuming that this last statement is in the defendant's name—

MR. McILRATH: It's in the Defendant's name, Judge. But, it was made with an understanding and I—it was made with the understanding on this plea, and they're the ones that backed out, not me.

THE COURT: Well, there's nothing about any deal in the thing. And, as I say, the last

Respondent adopts defendant's statement of facts except that respondent asserts that

statement is apparently written in his hand—

MR. McILRATH: Yeah, I know.

THE COURT: —'I understand this may be used against me in a court of law.'

MR. McILRATH: That's exactly right. And, I had it written in there for the simple reason that on two or three occasions he had backed out on that thing, and the jury was coming in, and I didn't wanna have them to come in again. I was trying to save the Court, the Prosecuting Attorney, and everybody time. And I think it's—I think it'd be unfair to my client.

As a matter of fact, I think the Bar Committee could probably work on it.

MR. ROBERTS: This case was set for trial, I believe, some time back in December; I'd like to refer to it and find out what the exact date is.

THE COURT: The only thing thereabouts is that October 17th, 'Cause is continued to November Term.' We can take judicial notice the November Term commenced the second Monday in November.

MR. ROBERTS: I believe, then, it would of been on that date that Defendant's Counsel and the Prosecutor did have a plea-bargain worked out.

MR. McILRATH: Oh, we had it worked out—

THE COURT: Well, let me interrupt. I think it goes to the credibility of, maybe, for a jury to pass on rather than for the Court to pass on.

MR. McILRATH: Well, you certainly wouldn't of gotten it if I hadn't of tried to save everybody time and trouble, because on different occasions he had not—he'd come in and then he'd back out.

MR. ROBERTS: That's true. Every word you are saying is true.

MR. McILRATH: Yeah, I know it's true; wouldn't say it if it wasn't.

MR. ROBERTS: However—

MR. McILRATH: We had reached an agreement on this thing—

THE COURT: Gentlemen—

MR. McILRATH: Then you get these liars down here and change their mind.

THE COURT: Off the record. Now, wait a minute, wait a minute.

(Whereupon, a discussion was had off the record.)

THE COURT: Now, what about prior convictions?

. . . . ."

the affidavit and plea of guilty was not induced by any plea-bargain agreement made by the prosecutor and that the prosecutor made no agreement to dismiss the murder charge if defendant would plead guilty to robbery. Respondent further asserts that at a pretrial conference a finding was made by the trial court that the confession was voluntary and was not induced by a plea-bargaining agreement made by the prosecutor. Respondent refers the court to the "attached affidavit" as the record support for its assertions. Appended to the transcript of the record is an affidavit of the court reporter in which it is stated that during a conference on the first day of trial the "prosecuting attorney made a statement to the effect: 'I told you before all deals were off.'" This affidavit was not agreed to by the defendant; it does not purport to be a correction of the record as such; it does not reflect where in the record any such statement allegedly occurred; it does not state that such a statement was made on the record and inadvertently not made a part of transcript but just as well could have been a remark made off the record, and it is on its face a conclusion by the court reporter rather than a transcription of that which was allegedly actually stated. The affidavit does not relate itself sequentially to any particular statement by anyone else. The only place in the record of the pretrial conference wherein it is noted that something was said and not recorded by the court reporter is at the conclusion of the discussion concerning the affidavit where the following appears: "THE COURT: Off the record. Now, wait a minute, wait a minute. (Whereupon, a discussion was had off the record.)" By a subsequent affidavit of the same court reporter filed here April 15, 1975, the reporter attests that the "in effect" statement referred to supra was made when the court was not on the record and that had such a statement been made while the court was "on the record", the court reporter would have recorded and transcribed it.

■ Although the first affidavit of the court reporter which is attached to the transcript shows it was "approved" by the circuit judge, nevertheless, it does not purport to be a correction of the record but rather the inclusion in the record of purported statements made off the record. The trial court and the attorneys knew at the time of the purported discussion that it was "off the record". That means they did not consider what was said to be part of the conference or trial of this case. If the attorneys or the court had desired to place "on the record" statements, discussion, or proceedings which took place "off the record", it was their obligation to do so at the time the statement or event occurred. Cf. *State v. Ford*, 487 S.W.2d 1, 6 (Mo.1972), cert. denied 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959 (1973).

The court will not consider the affidavit of the court reporter as part of the record on appeal in this case. See *State v. Ford, supra.*

■ Three additional affidavits were filed here September 9, 1975, by the state together with a "Motion Requesting Court to Consider Affidavits". These also seek to put into the record on appeal additional evidence, explanations of rulings allegedly made, and various conclusions. None of these affidavits are agreed to by defendant and none of them purport to correct the transcript of the record on appeal. They constitute argument, put forth in the form of affidavits, to support the position of the state that the trial court did not err in admitting the "Affidavit and Plea of Guilty" and the cover letter from defendant's attorney into evidence in this case.

The motion to consider these affidavits is overruled. *State v. Ford, supra; Hendershot v. Minich*, 297 S.W.2d 403, 410 (Mo. 1956).

The court will therefore consider the state's adoption of defendant's statement of

facts as agreement that the facts as stated are correct but that the state denies they warrant a conclusion that the affidavit and plea of guilty was obtained pursuant to an agreement between the prosecutor and defense counsel.

 We have set forth in a footnote supra the relevant portions of the record as to the pretrial conference and consider the statement by the prosecutor made during that conference that everything the defense counsel stated was true to be conclusive on the facts in this case as to those matters which were within the sole knowledge of the prosecutor and defense counsel. The court considers this to be particularly appropriate in this case. This for the reason that, although the prosecutor was present during all stages of these proceedings, no evidence was offered by him and no assertions were made by him during the pretrial conference, during the trial, or during the evidentiary hearing on the motion for new trial, which in any respect contradicted, diluted, or rendered suspect any of the assertions of defense counsel made during that pretrial conference.

The following is the testimony of defendant's attorney during the hearing on the motion for new trial as set forth in defendant's brief:

"MR. McILRATH . . .

"On January the—On the Saturday before January 28th I went to the jail to see the Defendant Donald Hoopes; his mother and father were there. I'd talked to Mr. Roberts about what he would do on a plea. At one time he said if he got ready that he wouldn't take a plea. Later he told me that he would. And I went to see if this man would give a plea. I explained to him that the guns were found at his sister's; that the case was dangerous. He said he didn't do it and he wouldn't plead.

"I was called—I went over to see Mr. Roberts, because I had to take a change of venue—I went to his house—I had to take a change of venue on the matter, and I went to his house before that, though, to talk about this because I couldn't try it. We discussed the thing. I—he gave me some testimony and some tapes that he had. And I told him this the man wouldn't plead.

"So, I was called Sunday. And I told him that if he would enter this plea of guilty to robbery that the murder case would be dismissed; Mr. Roberts had promised me that.

"So then Sunday I was called and he said he would sign it. And I called Mr. Roberts and Mr. Roberts told me that he would dismiss the murder charge; that he'd recommend ten years.

"And I set out in the confession that any promises that were made to him you (i. e., the trial judge) did not have to follow; that you and you alone would do the sentencing. But, it was definitely understood that the murder charge would be dismissed. And, for that reason, and that reason alone, this fella (i. e., the defendant) signed the confession.

"And then after that was over Mr. Roberts decided that he would try him even after that he said that he wouldn't use this confession because the fact that it was for the robbery alone, and then he did."

The prosecutor declined cross-examination and offered no evidence or testimony on the matter.

Defendant testified at trial and denied complicity in the robbery and the murder and, on cross-examination, admitted he had signed a statement (the affidavit and plea of guilty) to plead guilty to the robbery. On the motion for new trial, defendant testified that his attorney told him that if defendant would plead guilty to the robbery charge the prosecutor would recommend a ten-year sentence to the court and would dismiss the murder charge and that was the basis upon which he signed the affidavit and plea of guilty.

The trial court placed great emphasis on the fact that the last statement on the affidavit was in the defendant's own handwriting, that statement being, "I understand this may be used in a Court of law", and on the fact that the affidavit was obtained by and acknowledged before defendant's own attorney. This appears to have been the principal basis upon which the trial court considered the affidavit to have been "voluntary".

Additionally, the following colloquy appears after the court noted that the defendant wrote on the affidavit, "I understand this may be used in a Court of law":

"MR. McILRATH: Well, now, if the Court please, that was used for the simple reason that on two occasions he'd come in and was gonna plead guilty and didn't.

THE COURT: That's right.

MR. McILRATH: And for that reason that was put in there. But that still, he was, understood—and it wasn't to force the prosecuting attorney because the prosecuting attorney did promise that.

THE COURT: Well—

MR. McILRATH: And that was the only reason he signed it. And, well—

THE COURT: Now, I, I don't thing that constitutes reversible error at all.

MR. McILRATH: All right.

THE COURT: And the Motion for New Trial will be overruled."

■ Whatever was said between the prosecutor and defense counsel prior to trial and with reference to state's exhibit A and a possible plea of guilty was within the sole knowledge of those two persons. The prosecutor admitted on the record that everything defense counsel said to the court was true. The prosecuting attorney is the only official that has the power to voluntarily dismiss a felony charge in this state and he does not need the consent of the court to do so. He also controls whether he will or will not make some recommendation to the court as to the sentence. At least he can do

so, in his own discretion, unless the court advises him that he is not to make a recommendation.

The substance of the prosecutor's admission on the record .is that, regardless of whether agreements reference a possible plea of guilty in November or December 1973 were rescinded, the "Affidavit and Plea of Guilty" document was obtained from and signed by the defendant pursuant to and at a time when there *was* an agreement existing with respect to a plea of guilty. The reason McIlrath reduced defendant's plea to writing prior to appearing in court was because defendant had previously agreed to plead under an arrangement and then backed out at the last minute and did not actually plead guilty to the robbery, and neither McIlrath nor the prosecutor wanted that to happen again. In short, it was an effort to keep the defendant tied to the agreement.

■ Of course, a proposed plea of guilty does not become, in law, a plea of guilty until it is actually made in open court by a defendant before a judge and accepted by the judge under the prevailing criteria of voluntariness and knowledge of the consequences, etc., for it is only then that the judge can sentence a defendant. But every plea of guilty that is attempted upon the assurance by a prosecutor that he will or will not do something, of necessity, requires some discussion between the prosecutor and defense attorney as to the conditions of the plea and obviously this must take place before the plea is actually entered. It is axiomatic that, if a prosecutor agrees to dismiss a charge upon condition that the defendant agrees to plead guilty to another charge, the promise to dismiss is offered as an inducement to obtain the guilty plea.

The prosecutor agreed on the record that such arrangements did exist at that time and that the affidavit and plea was obtained pursuant to those arrangements and further that he, the prosecutor, thereafter refused to go through with the bargain.

In *State v. Williamson,* 339 Mo. 1038, 99 S.W.2d 76 (1936), this court reversed and remanded a first-degree-murder conviction because of error in admitting a confession into evidence which was obtained by the sheriff on the sheriff's assurances to the accused that he would take certain steps so as to avoid putting the accused on trial for murder. The court held that, if promises made by a person in authority to an accused "are reasonably sufficient to induce and do causally induce an expectation or hope of worldly benefit as against the pending charge, it is enough to bar the confession [citing numerous cases]." 99 S.W.2d at 79.

In *State v. Abel,* 320 Mo. 445, 8 S.W.2d 55 (1928), another first-degree-murder conviction was reversed and remanded for new trial for error in admitting defendant's offer to plead guilty into evidence on trial of the case. In *Abel* an investigator for the prosecuting attorney testified the defendant told the investigator to speak with the prosecutor about the case and that defendant said, "Go talk to him [prosecutor], and I will spill my guts for five years." The investigator responded, "No use talking; you could never plead guilty in a case like this for five years in the penitentiary." The court spoke of defendant's statement as an offer to plead guilty on condition that his punishment would be a five-year sentence. In ruling the case, the court said at 55–56:

"In *State v. Meyers,* [99 Mo. 107] 12 S.W. 516 [1889], the defendant, when arraigned, pleaded guilty, but the court refused to accept the plea, and it was not entered of record. At the trial, over the defendant's objection, the state was permitted to prove his plea of guilty when arraigned. This was held error. The court said (page 120 [12 S.W. 519]):

" 'But this fact surely did not authorize the reception of the plea of guilty in evidence, after the court had refused to receive that plea, and had placed the defendant upon his trial. No one would contend that, if the plea of guilty had been entered of record, such plea could have been re-

ceived in evidence against the defendant, and yet the same principle is involved whether the plea actually go upon record or not; in either case, it must, if received in evidence, be *conclusive* of the defendant's guilt. Like the previous question in parliamentary bodies, evidence of such a plea, having been made before a tribunal competent to try the party making it, cuts off debate and determines all issues. The course, therefore, pursued by the trial court, in this regard, was plainly inconsistent; the plea of the defendant should either have been received, and sentence passed accordingly, or that plea should never have been heard of again.

" 'By refusing to receive the plea and granting the defendant a trial, this, of necessity, meant *a trial* with the issues of fact to be determined by the jury, and not to be determined by the previous plea of the defendant, which admitted all that the state desired to prove. In short, the trial court could not refuse to receive the defendant's plea of guilty at one time, and then use it against him at another. The cases cited by the state, and many others, have been examined, but none have been found to sanction the introduction of such evidence.' "

■ As shown by *Williamson* and *Abel,* it makes no difference whether the utterances of the accused be thought of as a confession, a plea of guilty later withdrawn by leave of court, or an attempt to enter a plea of guilty upon certain promises having been made by an official. The same principles of law holding them to be inadmissible in the trial of the case apply. This is so because the promise of leniency, if relied upon by the accused, renders the confession involuntary in that it undercuts the accused's waiver of trial by a jury and privilege against self-incrimination, both of which are waived by a plea of guilty.

In *Williamson* the confession itself did not refer to the promises of the officials. See 99 S.W.2d 78–79. It was the oral testimony of the sheriff that established the

underlying promises giving rise to the confession. In the instant case, the affidavit and plea does not, on its face, refer to the agreement between the prosecutor and defense counsel which underlay the giving of the statement. The existence of the prosecutor's promise or agreement in the instant case was admitted by the prosecutor and thus no testimony was needed on that matter.

The basis principle applicable to the instant case is most succinctly stated in the concluding paragraph of *Abel* at 8 S.W.2d 56: "If this had been an offer to compromise a civil action, it would have been privileged. We can see no good reason why it should not be so considered in a criminal action. The offer to plead guilty should have been accepted and sentence passed upon it, or it should have been rejected, and 'never have been heard of again.' *The prosecuting attorney should not have been allowed to reject the conditional offer and afterwards use it against the defendant at the trial.* The judgment is reversed, and the cause remanded." (Emphasis added.)

More recently in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), a conviction on a plea of guilty was vacated because the prosecutor did not perform his part of an agreement that was entered into between the prosecution and defense reference a plea of guilty. The court said, 404 U.S. 260, 261, and 262, 92 S.Ct. 498–499:

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States,* 397 U.S. 742, 751–752, 90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 747 (1970).

"However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. . . The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. . . .

". . . [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

What is said supra of the federal courts is equally applicable to state courts.

In *State v. Pughe,* 403 S.W.2d 635, at 641 (Mo.1966), the court said, in referring to earlier cases: "They stand for the proposition that the *appellate* court should hold confessions inadmissible as a matter of law if upon consideration of all of the evidence in the transcript . . . it is conclusively shown that the confessions were involuntary."

This court has considered all of the evidence in the transcript and holds that the affidavit and plea of guilty has been conclusively shown to be the product of plea negotiations between the prosecutor and defense counsel and was executed by the defendant pursuant to promises made by the prosecutor which were within his power and authority to perform; that the prosecutor withdrew from the arrangements after

the affidavit was executed and filed and refused to perform his part of the bargain and, therefore, the affidavit and plea of guilty became involuntary in law and was not admissible on the trial of this case for any purpose whatever. In the words of *State v. Abel, supra*, "it should have been rejected, and 'never have been heard of again.'" The same ruling is applicable to the cover letter of defendant's attorney, state's exhibit A–1.

The admission of the affidavit and plea constituted prejudicial error and requires the judgment to be reversed and the cause remanded for new trial.

The following occurred during the cross-examination of defendant by the prosecutor.

"Q. Have you ever said that you were guilty with David Wayne Martin of robbing Orris Oliver Baker? A. I signed a statement to it, yes. Q. Was it a lie? A. I signed a statement to plead guilty for it."

Defendant complains this was also error for the same reasons set forth supra to the admission of the conditional confession itself into evidence. The court's holding as to the inadmissibility of the confession or affidavit itself applies with equal force to the prosecutor's reference to that document or admissions made therein on cross-examination. This is so because the purpose of this trial was to determine whether defendant was guilty or not guilty of robbery and murder. This trial was not an inquiry into whether defendant had agreed at some earlier date to plead guilty pursuant to promises by the prosecutor. Here the affidavit was executed to obtain a particular agreed-upon result. That result was to be a conviction of robbery and a dismissal of the murder charge. When the result was aborted by the prosecutor's change of mind, the words spoken or written by the accused to obtain that result must also go by the wayside.

To do otherwise would permit the prosecutor to make an agreement; obtain state-

ments helpful to the prosecution pursuant to that agreement; break the agreement and yet have the full benefit of the bargain under the guise of impeachment or the elicitation of admissions on cross-examination which admissions were originally made upon a promise of leniency thereafter withdrawn.

■ When statements are obtained from an accused upon promises of leniency in return for a plea of guilty and the plea of guilty is aborted, the admissions obtained pursuant to the agreement, in the words of *Meyers* and *Abel, supra,* should "never have been heard of again".

■ Defendant also contends as follows: "Defendant was denied his constitutionally protected right not to be subjected to punishment two times for the same crime by being tried, convicted and sentenced for robbery first degree on Count I of the information and being tried, convicted, and sentenced for murder first degree (felony murder), Count II of the information, in view of the fact that the robbery first degree alleged in Count I was an essential element of the murder first degree (felony murder) as alleged in Count II of the information." The point is overruled. *State v. Chambers*, 524 S.W.2d 826 (Mo. banc 1975).

The judgment of the circuit court is reversed on both counts and the cause remanded for new trial.

All of the Judges concur.