**Glen Russell SHEPARD, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD 28697.**

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 15, 1977.

Thomas R. Bellmann, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This appeal is taken from an order by the court below denying a Rule 27.26 motion to vacate judgment and sentences previously entered upon appellant's pleas of guilty to charges of carrying a concealed weapon and stealing over $50.00. He received a sentence of four (4) years on the first charge and eight (8) years on the second, such sentences to run consecutively. Two other

pending charges against the defendant were dismissed by the prosecutor; the appellant's counsel requested a pre-sentence investigation, and the state made no objection to that procedure; and, the state made no recommendation to the trial court as to sentences at these guilty plea proceedings.

These pleas were entered on March 28, 1974, but the record reveals that the pre-sentence investigation was not received until the latter part of May, 1974, and sentences were not imposed until November 22, 1974. At least part of this delay was due to the fact that other charges were pending in the federal court of the state of Nevada and in the state court in Arizona, in one or both of which the appellant testified as a witness for the prosecution.

■ At the sentencing hearing below, the assistant prosecuting attorney did make a recommendation to the court that the appellant be given the maximum penalty of five years on the first charge and ten years on the second, and the sole point raised by appellant on this appeal is that in so doing, he materially breached a plea bargain agreement previously reached between appellant's then counsel and the assistant prosecuting attorney that included the agreement that the state would make no recommendation as to sentences at any stage of the proceedings. Appellant's argument stands upon the proposition that such breach of the agreement rendered his guilty pleas involuntary.

On the other hand, while the state concedes that a plea bargain was in fact entered into, its position both at the hearing on the motion to vacate and here, is that the agreement was only that the state would make no recommendation as to sentence at the *guilty plea* proceedings. The state disclaims the fact of any agreement that it would make no recommendation at the *sentencing* proceedings and asserts that there was no breach of the plea bargain agreement.

■ The issue here, thus, narrowly circumscribed and confined, is governed by certain well-defined principles which must be applied to the facts in this record. The law is now well settled that the "constant factor" in plea bargaining agreements "is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled*". (Emphasis supplied). *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 499[5], 30 L.Ed.2d 427 (1971).

In *Santobello,* as in the case at bar, it was shown that part of the plea bargain agreement was that the prosecutor would make no recommendation as to the sentence. Several months after the entry of the guilty plea pursuant to the agreement, the defendant appeared for sentencing. At that time, the defense counsel, judge and prosecutor were not the same persons involved in the guilty plea proceedings and the then prosecutor recommended to the court that the maximum sentence be imposed. Upon objection by defense counsel to this recommendation as violative of the previous agreement, the trial court stated that it would not be influenced, in any event, by the recommendation of the prosecutor and that any such recommendation did not "make a particle of difference" to the court. The maximum sentence was then imposed. This conviction was affirmed by the Supreme Court, Appellate Division of New York, 35 A.D.2d 1084, 316 N.Y.S.2d 194 (1970). Certiorari was granted by the Supreme Court of the United States, which court vacated the judgment and sentence, and in so doing, stated (404 U.S. at 262, 92 S.Ct. at 499[6]):

> "On this record, petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, *but also on condition that no sentence recommendation would be made by the prosecutor. * * *"* (Emphasis supplied)

The court remanded the cause to the New York state court to decide whether the circumstances of the case required that there be specific performance on the guilty plea "bargain", in which event the court stated

that the "petitioner should be resentenced by a different judge", or whether the petitioner be granted the opportunity to withdraw his guilty plea.

At least three of the circuit courts of the United States have followed the lead of Santobello.

In *United States v. Crusco et al.,* 536 F.2d 21 (3rd Cir. 1976), the defendant agreed to plead guilty to one count of the charge in return for the government's promise to drop the second count and also to take no position on sentencing on the first count. However, at the sentence hearing, the government attorneys attempted to portray the defendant as a major underworld criminal figure who was dangerous to have on the public streets. The court there said, l.c. 26:

> "* * * We see the Government's characterization as a transparent effort to influence the severity of Cimmino's sentence * * *"

and permitted him to withdraw his guilty plea. The court further stated, in connection with the government's promise to the defendant to take no position on sentencing, l.c. 26:

> "* * * Once it makes a promise, *Santobello* requires strict adherence. * * *"

In *Dugan v. United States,* 521 F.2d 231 (5th Cir. 1975), the court said, l.c. 233:

> "It is axiomatic that no guilty plea that has been induced by an unkept plea bargain can be permitted to stand."

In *Geisser v. United States,* 513 F.2d 862 (5th Cir. 1975), the court, addressing itself to plea bargains, stated, l.c. 870–871:

> "What we are saying is that the United States Government must in the light of the commitment made by its prosecutorial arm look carefully at the constitutional obligations owing Bauer. When it looks * * * all will see *Santobello* as a lion in the streets * * *
>
> * * * * * *
>
> Thus, following *Santobello,* defaulted plea bargains must be remedied."

To like effect and adopting the rule in *Santobello,* see *United States v. Brown,* 500 F.2d 375, 377 (4th Cir. 1974).

The far-reaching principle of *Santobello* has been embraced by the Supreme Court of Missouri in *State of Missouri v. Hoopes,* 534 S.W.2d 26 (Mo. banc 1976) where a plea bargain resulted in an agreement by the prosecutor that he would dismiss a charge of murder and accept a guilty plea of robbery in the first degree by means of a dangerous and deadly weapon. As a result of this agreement the defendant signed a confession to the robbery charge at the behest of his attorney. While the prosecutor did not effectively deny the agreement, he decided to try the defendant on both charges and was permitted to introduce the written confession to the robbery charge over the objection of defense counsel. Hoopes was convicted on both charges, appealed and his conviction was reversed upon the grounds that the confession was improperly admitted into evidence since it was the result of an unkept plea bargain. In so ruling, the court quoted at length from *Santobello* as to the purpose and utility of plea bargaining in the practical administration of criminal justice and quoting from *Santobello,* the *Hoopes* court stated, l.c. 36[6]:

> "* * * '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*'
>
> *What is said supra of the federal courts is equally applicable to state courts.*" (Emphasis supplied)

Pertinent to the question here presented the record on this appeal includes a transcript of the proceedings upon the entry of the guilty pleas. As to the first charge of carrying a concealed weapon, the able counsel and trial judge made the orthodox and complete record to satisfy the constitutional requirements and then the following colloquy appears:

> "THE COURT: Any record you gentlemen wish to make?

MR. HOGSETT (Assistant Prosecuting Attorney): *The state has no recommendation,* Your Honor. I do understand that the defense counsel intends to ask the Court for a pre-sentence investigation, and we have no objection to that.

THE COURT: Mr. Katz, any record you wish to make?

MR. KATZ (Defense Counsel): Yes. We would ask the Court to institute a pre-sentence investigation.

THE COURT: Mr. Katz, as a result of your discussions with the representatives of the State, were you under the impression *that no recommendation would be made,* other than for pre-sentence investigation?

MR. KATZ: Yes, Your Honor.

THE COURT: Mr. Shepard, was that also your understanding as to what the State would recommend?

THE WITNESS (Shepard-defendant): Yes.

MR. HOGSETT: Now, for the record to be clear, Your Honor, we're not recommending it, we're simply not objecting to it.

THE COURT: All right. Perhaps I should have phrased it by asking if it was the understanding of both Mr. Katz and Mr. Shepard that the State would not be making any *other recommendation, other* than not opposing the request for a pre-sentence investigation?

MR. HOGSETT: *That's correct.*

THE COURT: Is that true, Mr. Katz?

MR. KATZ: *Yes, Your Honor.* In addition to dismissing the other two cases that are involved.

THE COURT: Is that your understanding, Mr. Shepard?

THE WITNESS: *Yes, sir.* " (Emphasis supplied)

On the guilty plea proceedings with reference to the stealing charge, the following appears:

"THE COURT: Do you have any record to make gentlemen?

MR. HOGSETT: *The State has no recommendation in this case,* Your Honor.

Again, I understand the defense counsel intends to ask the Court for a presentence investigation, to which the State has no objection.

\* \* \* \* \* \*

THE COURT: Mr. Katz, was it your impression that *the State would not make any recommendation in this case* ?

MR. KATZ: *Yes, Your Honor,* other than—

THE COURT: Not opposing a pre-sentence investigation?

MR. KATZ: Yes, and dismiss the other two cases.

THE COURT: Was that your understanding?

THE WITNESS: *Yes, sir.* " (Emphasis supplied)

This record is clear that the prosecutor acknowledged that part of the plea bargain agreement was that the state would make no recommendation as to sentences. No limitation as to time was stated by the prosecutor although if the agreement was as now defined by the State, it would have been a simple matter to have qualified the prosecutor's acknowledgment by some limiting phrase such as "at this time" or "at these guilty plea proceedings".

The sentencing could not occur at the time the guilty pleas were entered since a pre-sentence investigation was to be obtained and as the trial court, the prosecutor and defense counsel were aware, obtaining such a report involved the lapse of varying lengths of time. In fact, because of that and other reasons above mentioned, several months elapsed between the guilty pleas and sentencing. An agreement not to make a recommendation at this stage of the proceedings would be meaningless.

At the sentencing proceedings the same prosecutor, Mr. Hogsett, did recommend maximum penalties on each of the charges and thus breached the prior plea bargain agreement. Neither he nor the trial court saw "*Santobello* as a lion in the streets". *Geisser v. United States, supra.*

The trial court in its findings of fact and conclusions of law made no specific finding as to the existence or nonexistence of a plea bargain agreement which incorporated a consideration that the State would make no recommendation as to sentences. However, the court seemed to accept the fact that such a plea bargain had been made but placed the emphasis for its ruling on the facts that the prosecutor's recommendation at the sentencing was not binding upon the court; that any agreement with the prosecutor would be separate and distinct from "his (the defendant's) contract with the court"; that the court does not participate in the plea bargaining process; that no objection was made at the sentencing proceedings as to the prosecutor's recommendations; that the court did not follow those recommendations; and, that it did not find *Santobello v. New York, supra,* controlling or compelling.

It is futile to speculate as to the effect that the recommendations of prosecutorial authorities may or may not have on a sentencing court in a given case. As a matter of common practice such recommendations are requested and to say that they are never considered or given any weight would be unrealistic. In any event, the appellant and his counsel placed importance upon the consideration that no recommendation would be made in this case when the plea bargain was accomplished.

In the interest of justice and in recognition of the importance of plea bargaining agreements in the system of administration of the criminal law and the necessity that such agreements to be kept inviolate by the prosecutorial authorities, the judgments and sentences herein are vacated and the cause is remanded with directions that a further evidentiary hearing be held and additional findings of fact made as to whether or not the plea bargain was made and the terms and conditions thereof and if a breach of such agreement occurred and thereafter for such proceedings as are then appropriate under this decision.

All concur.