**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Dennis SHUMATE, Defendant-Appellant.**

**No. 42110.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 15, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Nov. 20, 1981.

Application to Transfer Denied
Jan. 18, 1982.

---

Stuart Cofman, St. Louis, Paul Corning, Jr., Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant, after a jury trial, was convicted of assault in the first degree, stealing over $150 without consent, and stealing without consent. He appeals.

The evidence shows that on January 26, 1979, at approximately 11:00 p. m., Tom Buyatte, a maintenance worker at Anthony's Chevrolet Co., located in the City of Crestwood, Missouri, was taking trash from his employer's building to a dumpster in a parking lot at the rear of the building. En route to the dumpster, Buyatte noticed a man bending over the engine of one of his employer's pick-up trucks. Puzzled by the man's activities, Buyatte asked him what he was doing. The man replied that he was taking the truck's battery for his own use. Buyatte then approached the man and they began to grapple. Shortly thereafter, the man called for assistance by twice shouting, "Dennis, I need help." In response to the cry for help, two men approached from the southwest corner of the lot. One of the men was carrying a cross tire tool. Buyatte continued struggling, until felled by a blow to the back of the right shoulder. Lying prone, Buyatte was struck several times with what he believed to be a metallic object, and then was repeatedly kicked in the chest. Buyatte estimated that three people were in the immediate vicinity of his body during the beating, but could not tell if all three were participating in the attack.

Eugene Brakensiek, who lived behind Anthony's Chevrolet, was shoveling snow that evening when he heard a noise similar to that of lugs being removed from tires. Mr. Brakensiek immediately went inside his home and telephoned the police. Returning outside, Brakensiek detected the silhouettes of three to four persons in the rear of the lot of Anthony's Chevrolet. He was unable to see the faces of these figures but heard someone say "No, don't do that," and several seconds later "Let's go Dennis." The men fled the scene before the police arrived.

Two Crestwood Police Officers responded to the call. The officers proceeded to the rear lot where they found Buyatte who was bloodied by the attackers, but still conscious. Buyatte related his account of the attack and was then rushed to the hospital by ambulance.

At the hospital, Crestwood Police Officer David Higgins interviewed Buyatte. From a description given by Buyatte, Officer Higgins prepared a composite likeness of the man with whom Buyatte had struggled. Buyatte was then shown photographs of several possible suspects, but was unable to identify any of them. Buyatte confirmed that his wallet, which contained $25 in cash and a $160.25 paycheck, was missing. Two days after the original sketch, Officer Higgins revised the composite in accordance with corrections proffered by Buyatte. The revised composite was published in the newspaper the next day. In response to the published composite, two agents of the Illinois Terminal Railroad Police contacted Officer Higgins. The two agents met with Officer Higgins at the Crestwood Police Station to view the composite and exchange information. Subsequently, Officer Hig-

gins, four Crestwood Police Officers and the two railroad agents proceeded to the residence of Carl Shumate in Madison County, Illinois.

At the home of Carl Shumate, Officer Denney, a Crestwood Police Officer, spoke with Mrs. Carl Shumate. During the visit Officer Denney procurred a pair of bolt cutters from Mrs. Shumate. These bolt cutters were later linked to the crime. The officers left Carl Shumate's residence and proceeded to the home of the defendant, Dennis Shumate. The officers questioned the defendant in Madison, Illinois. At that time he orally admitted participating in the theft of ten tires and a battery from Anthony's Chevrolet with Carl Shumate and Dicke Joe Rebstock. Furthermore, defendant identified Rebstock as the person who took Buyatte's wallet. Defendant denied striking Buyatte with a tire-tool.

In his first point on appeal the defendant asserts that the prosecution attempted to improperly interject hearsay evidence at trial, and this maneuver unfairly implicated defendant as a perpetrator of the crime. Officer Higgins testified for the state that he prepared a composite likeness of the man Buyatte struggled with. On direct examination of Officer Higgins, the prosecution questioned Higgins about responses to the publication of the drawing. The questioning proceeded as follows:

Q. And, did you have occasion to receive any inquiries about the photograph that had been published in the Globe Democrat?

A. Yes, sir.

MR. COFFMAN: I object to any inquiries that might have been received as being hearsay.

THE COURT: Overruled.

Q. You may answer.

A. I was contacted by two agents of the Illinois Terminal Railroad Police.

Q. What were their names?

A. Mr. Jim White and George Marasek (phonetic)

Q. And, did they have occasion to tell you they recognized the photograph resembled someone?

MR. COFFMAN: Objection.

THE COURT: Objection sustained.

MR. BARRY: We are not offering it for the truth, we are offering it to the Court for investigation.

THE COURT: Objection sustained.

Q. Did you have occasion to later see them, show them this photograph yourself?

A. Yes sir, I did.

Q. Where did you show them the photograph?

A. Our department station.

Q. And, did you have occasion to proceed anywhere after that?

A. Yes, sir, I did.

Q. Where did you proceed?

A. Based on their information they supplied, we proceeded to the Shumate residence in Madison County, Illinois.

In spite of the fact that the hearsay evidence was not admitted the defendant contends that he was prejudiced by Higgins' testimony because it created an inference that White and Marasek had information which would implicate the defendant. We do not agree. Defendant cites *State v. Chernick*, 278 S.W.2d 741 (Mo.1955), to support this contention. In *Chernick*, the prosecution made three different references during the trial to the fact that after he had questioned one of the co-perpetrators of the crime, he immediately put out a warrant for the arrest of the accused. Furthermore, the prosecution asked the jury to draw an inference of what the co-perpetrator had said since it would have been inadmissible for him to relay the details of the conversation. *Chernick, supra*, 747. In the present case, Officer Higgins stated that the Illinois Terminal Railroad Police contacted the Crestwood Police in response to the published composite. Nowhere in his testimony did he mention or allude to the fact that the railroad agents had information which would implicate the defendant. Furthermore, no arrest warrant was issued for either Carl or Dennis Shumate immediately after the meeting at the Crestwood Police Station. Following the meeting, the

officers called upon Carl and Dennis Shumate. As a result of this investigation the police obtained the bolt cutters, and Dennis Shumate admitted the theft and robbery. The fact that the Crestwood Police went to the homes of Carl Shumate and Dennis Shumate is material and relevant to establish a foundation for the admission of the bolt cutters and defendant's confession. The events which led to that investigation are an integral part of the foundation. Since the trial judge properly excluded the statements of White and Marasek, no error was committed in allowing Officer Higgins to testify as to the Crestwood Police and the consultations with the agents of the Illinois Terminal Police.

■ Defendant next contends that the trial court erred in admitting reproductions of the original and revised composites of Carl Shumate because those items are irrelevant to the issue of defendant's guilt. We do not agree. While not being conclusive on the guilt or innocence of defendant, the composites of Carl Shumate are relevant because they lay a foundation for the introduction of defendant's confession. Only after the agents of the Illinois Terminal Railroad Police contacted Officer Higgins did the Crestwood Police bring their investigation to Madison, Illinois. From this investigation, the Crestwood Police secured defendant's confession.

■ The defendant also claims that the admission of the photographs used to identify the participants in the crime was prejudicial because Buyatte failed to make a positive identification of the defendant using those photographs. We do not agree. The record shows that while Buyatte was in the hospital he was shown defendant's photograph. Although he stated the photograph of the defendant "looked familiar," Buyatte did not positively identify defendant as one of the perpetrators. The failure of the witness to positively identify the defendant is not suggestive of anything harmful to the defendant. His failure to make positive identification may be considered by the jury in assessing the credibility of the witness, and thus was properly

admitted into evidence. *State v. Dancy,* 541 S.W.2d 35, 37 (Mo.App.1976).

■ In challenging his conviction of stealing $150 without consent defendant alleges that the trial court erred in failing to submit the proper instructions required by MAI–CR 2d. Since the case was tried in July, 1979, the court was required to use the pattern instruction contained in MAI–CR 2d. Defendant contends the trial court erred in deviating from the approved instructions. We do not agree. The requisite elements of stealing without consent are set forth in MAI–CR 2d 24.02.1. The Notes on Use to MAI–CR 2d 2.10 mandate that the relevant parts of MAI–CR 2d 2.10 and 2.12 "be given whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to and or attempted to aid another in planning, committing or attempting to commit an offense." MAI–CR 2d 2.10, Notes on Use at Note 3.

In the present case the first and second paragraphs of MAI–CR 2d 2.12 were given. The notes on use under MAI–CR 2d 2.12 required the court to give a separate instruction defining the offense initially contemplated, stealing over $150 without consent. MAI–CR 2d 2.12 Notes on Use at Note 5.

MAI–CR 2d 2.04, however, requires that all verdict directing instructions contain the essential elements of the offense. MAI–CR 2d 2.04, Notes on Use at Notes 1 and 2. This requirement of MAI–CR 2d 2.04 apparently conflicts with the requirement of MAI–CR 2d 2.12, that a separate instruction be given defining the initially contemplated offense. The trial court resolved this disharmony by incorporating the essential elements of the offense, set forth in MAI–CR 2d 24.02.1, within the structure of MAI–CR 2d 2.12. Instruction No. 9 reads as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 26, 1979, certain persons committed the offense of stealing without consent of Anthony Sgroi, and

In that on January 26, 1979, in the County of St. Louis, State of Missouri, certain persons appropriated six Firestone brand tires, four Uniroyal brand tires and one Delco brand battery owned by Anthony Sgroi, and

In that certain persons appropriated such property for the purpose of withholding them from the owner permanently, and

In that the proper [sic] so appropriated had a combined value of at least one hundred and fifty dollars, and

Second, that the defendant, either before or during the commission of the offense of stealing without consent withe [sic] the purpose of promoting its commission, aided such other persons in committing that offense, then you will find the defendant guilty under Count II of stealing without consent.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you find the defendant guilty under Count II of stealing without consent, you will assess and declare the punishment at:

1. Imprisonment in the division of corrections for a term fixed by you, but not less than two years and not to exceed seven years, or

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

We cannot perceive any prejudice to the defendant by virtue of the fact that the elements of stealing over $150 were added to the structure of MAI–CR 2d 2.12. *State v. Clark*, 607 S.W.2d 817, 820–821 (Mo.App. 1980). Thus this point is ruled against defendant.

■ The defendant next contends that paragraph First of the above instruction is conclusory and distracts the jury from their duty of finding the requisite elements of the offense. Defendant made no specific objection to this alleged defect at trial, nor was this issue raised in defendant's motion for a new trial. *State v. Rollie*, 585 S.W.2d 78, 88 (Mo.App.1979); Rule 28.03. Therefore, any alleged error must be reviewed under Rule 29.12(b), the plain error rule. For that reason we must uphold the lower court's actions unless the misdirection in instructing the jury on the law of the case caused a manifest injustice. *State v. Rollie, supra*, at 88. We believe defendant suffered no manifest injustice as a result of the alteration of the instruction because "[t]he jury was fully and clearly instructed on the law applicable to the case." *State v. Clark, supra.*

Furthermore, defendant claims that the aforementioned instruction is erroneous because the actual owner of the tires is Anthony Chevrolet Co. (and not Anthony Sgroi), and the testimony identifying the stolen tires is unclear. Neither error was objected to at trial or included in the defendant's motion for a new trial; therefore, these points are not properly preserved for review. Rule 28.03. *State v. McGee*, 592 S.W.2d 886, 888 (Mo.App.1980). Because defendant has failed to demonstrate that the error deprived him of any substantial right, we must reject his claim under the plain error rule. Whether the tires and battery are owned by either Anthony Chevrolet or Anthony Sgroi is of little import to the defendant's guilt or innocence of this offense. Any error in attributing ownership in this case would not result in manifest injustice. Although the instruction was more specific in the description of the tires than the testimony elicited, the testimony of Anthony Sgroi and Officer Tirre did not contradict the description of the tires in the instruction. It is difficult to see how defendant suffered any prejudice as a result of such an error, must less manifest injustice. *McGee, supra*, 888.

■ The defendant next alleges that the trial court erred in not submitting instruction MAI–CR 2d 2.14 to the jury with respect to Counts I and III. Modeled after § 562.051, RSMo 1978, MAI–CR 2d 2.14 is a

mandatory instruction that "must be given, requested or not, except as otherwise provided, when two or more persons are criminally responsible for an offense divided into degrees; and an offense is so submitted that the jury may find the defendant guilty of two or more 'degrees' thereof." MAI–CR 2d 2.14, Notes on Use at Note 3, quoting § 562.051, RSMo 1978. In order for MAI–CR 2d 2.14 to be applicable—evidence must be elicited that the "defendant and another or others were all 'criminally responsible' for" the charged offense. MAI–CR 2d 2.14 Notes on Use at Note 3(a). Thus, the main effect of MAI–CR 2d 2.14 is to instruct the jury that "when two persons are criminally responsible for an offense which is divided into degrees, each person is guilty" to the degree compatible with that state of mind with which he acted. § 562.051, RSMo 1978. The evidence presented clearly required the trial judge to instruct the jury as provided in MAI–CR 2d 2.14. The evidence establishes that persons other than the defendant were criminally responsible for the offense. The failure of the trial judge to issue this instruction to the jury was an oversight. No objection, however, was made at trial to this omission. Furthermore, the defendant did not include this point in his motion for new trial. Defendant recognizes this point has not been properly preserved for review, but contends that manifest injustice has resulted. *State v. Sykes*, 559 S.W.2d 643, 644 (Mo.App.1977); Rules, 28.02(e), 28.03, 29.12(b). The application of the plain error rule is discretionary, *State v. Ball*, 591 S.W.2d 715, 716 (Mo.App. 1979), and should only be invoked when there is a strong, clear showing of manifest injustice. *State v. Davis*, 566 S.W.2d 437, 447 (Mo.banc 1978). The defendant asserts that the trial court's nonfeasance was manifestly unjust because the jury was not instructed that a person is only criminally liable to the degree compatible with the culpable mental state with which he acted. The state argues the omission of MAI–CR 2d 2.14 was not prejudicial since the jury was instructed on the different degrees of assault in separate instructions. Thus, the state asserts that after making a determi-

nation of defendant's mental culpability the jury had the choice of either degree. In support of this proposition, the state cites *State v. Boyington*, 544 S.W.2d 300 (Mo. App.1976) and *State v. Arrington*, 559 S.W.2d 749 (Mo.banc 1978), reversed on other grounds, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979). Both *Boyington* and *Arrington* held that the failure of the trial court to give a mandatory instruction admonishing the jury to separately consider the elements of each count on each offense in a multiple count indictment was not prejudicial. While not precisely on point, we find these cases persuasive in this situation.

The purpose of MAI–CR 2d 2.14 is to focus the jury's attention on the actual mental culpability of the defendant. § 562.051, RSMo 1978. Thus, there is no manifest injustice if the instructions given to the jury clearly indicate that a particular mental state must be proven to establish defendant's guilt of a higher degree offense. In Instruction No. 7 the trial judge properly instructed the jury on the requisite, mental culpability for first degree assault. The instruction contained a tail directing acquittal if the jury did not find all of the elements were proven, including the proper mental state. In Instruction No. 8 the trial judge instructed the jury that if they acquitted the defendant of first degree assault, then they must consider the lesser charge of second degree assault. The trial judge properly instructed the jury on the requisite mental state for second degree assault. Looking at the two instructions as a whole it is clear that the attention of the jury was sufficiently directed to the question of defendant's actual mental culpability. Thus, there was no manifest injustice to the defendant as a result of the trial judge's omission of MAI–CR 2d 2.14 on Count I. The same rationale applies to Count III.

Defendant contends that there is insufficient evidence to submit the instruction charging him with stealing without consent. "In determining whether there is sufficient evidence to support a criminal conviction, the appellate court considers as true the

evidence most favorable to the state and all favorable inferences reasonably to be drawn therefrom." *State v. Longmeyer,* 566 S.W.2d 496, 499 (Mo.App.1978). Viewed in the light most favorable to the state with respect to Count III, the evidence places defendant at the scene of the crime and actively participating in the theft of the tires and battery. Defendant and Rebstock came to the aid of Carl Shumate after Carl had engaged in a struggle with Buyatte. Shortly thereafter, Buyatte was struck from behind. Defendant assisted in the assault. The evidence further shows that after the assault a wallet was taken from the victim. Five dollars was subsequently removed therefrom to purchase gasoline for the return trip to Madison, Illinois.

 In order to make a submissible case of aiding and abetting, the state must have introduced evidence showing more than defendant's mere presence at the scene of the crime. *State v. Taylor,* 542 S.W.2d 91, 93 (Mo.App.1976). Although such presence may create an inference of guilt, "there must be some evidence that the defendant, in some fashion, associated himself with the venture or participated in the crime in some manner as something he wished to bring about or to make the offense succeed." *State v. Clark,* 596 S.W.2d 747, 751 (Mo.App.1980). This is not a case where the defendant was merely a bystander to the entire transaction. Defendant actively participated in the theft of the tires and batteries. He assisted in the assault upon Buyatte. Immediately following the assault the wallet was taken. Defendant denies taking the wallet, but it is not necessary that the defendant do all the acts personally which constitute the offense. It is enough that he assists others in the perpetration of the crime. *State v. Butler,* 310 S.W.2d 952, 957 (Mo.1958). In light of these facts we find there is sufficient evidence to submit the question to the jury.

Finally, defendant alleges that the trial court erred when it failed to issue MAI–CR 2d 2.60. Defendant, however, failed to object to this omission at trial, or raise the issue in his motion for a new trial. Thus,

defendant cannot prevail unless the plain error rule is applicable. As stated earlier, the plain error rule will not be invoked unless there is a clear showing of manifest injustice. *State v. Davis, supra.* Defendant has failed to demonstrate any prejudice stemming from the omission, thus we reject his claim.

Judgment affirmed.

WEIER and GUNN, JJ., concur.