**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Tommy Lee CHATMAN,
Defendant-Appellant.**

No. 48124.

Missouri Court of Appeals,
Eastern District,
Division Six.

Oct. 23, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1984.

Application to Transfer Denied
Jan. 15, 1985.

Henry Paul Fox, Jr., Asst. Public Defender, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals conviction on charge of murder first degree, § 565.003 RSMo 1978. He was charged as a prior offender and sentenced to a term of life imprisonment.

For purposes of this appeal we consider the basic facts as true. The crime was committed by Ingram, Rhodes and defendant Chatman on December 1, 1980. Ingram told the authorities that the three men planned to rob Frazier Pickens and that Rhodes shot and killed Pickens before Ingram arrived. They then completed the robbery and burned the body in an automobile. After Ingram's statement the police arrested defendant on April 7, 1983.

Defendant here contends that his taped confession was erroneously admitted into evidence because it was obtained as part of a deal with the state which provided that in exchange for his statement he would only be prosecuted for the robbery and not for the murder. He also seeks dismissal of the murder charge because under the cooperation agreement he was to be prosecuted only for robbery.

On the day of arrest the defendant signed a *Miranda* waiver and spoke with Detective Reinhardt but he refused to make any incriminating statements. Confronted with the substance of Ingram's prior statement defendant asked Reinhardt what type of consideration he would receive for giving a statement. The prosecutor authorized Reinhardt to offer a deal to defendant Chatman in order that the trigger man, believed to be Ingram, might be successfully prosecuted and convicted. Detective Reinhardt interpreted the proposed agreement as follows: In exchange for a statement defendant would be prosecuted for robbery first degree but not for capital murder. The conditions were that Chatman "had to be completely truthful and that he had to cooperate with the prosecutor's office in the prosecution of any other suspects involved in the death of Frazier Pickens." Before the agreement was made Reinhardt told defendant that the purpose of the deal requiring his cooperation was the prosecution of Ingram and may involve depositions and testimony in court. Defendant agreed and gave a statement. He then suggested that if he was permitted to talk to Rhodes and Rhodes was given a similar agreement a statement from Rhodes might develop. That in fact was permitted, however, unknown to defendant, the meeting with Rhodes was in a room wired with listening devices and under police scrutiny. Rhodes was offered the same agreement and gave a statement on the same day.

The next day, August 8, 1983, the prosecutor instructed Reinhardt to subject defendant and Rhodes to a polygraph test. The state contends it was entitled to the test as the agreement required full cooperation. The parties do not dispute that a polygraph was not specifically discussed when the agreement was made. Detective Reinhardt first mentioned it the following day. There was no evidence of what was to be asked in the polygraph test.

When defendant refused the polygraph the robbery charge was withdrawn and a murder charge was filed. Four months later defendant's motion to suppress the statement was heard and subsequently overruled. Defendant responded by filing a motion to dismiss the murder charge or to enforce the agreement and then, through counsel, filed a memorandum agreeing to a polygraph. The new offer to take a polygraph was expressly not an abandonment of defendant's position that the statement should be suppressed or a waiver of the motion to dismiss or enforce the bargain. The motion to dismiss or enforce was heard by the trial judge on the day the trial was to begin and was overruled. The trial court ruled that the state had proved its compliance with the agreement and default by defendant maintaining that the polygraph was part and parcel of the agreement. While he expressly declined to find the polygraph test was a reasonable method of testing truthfulness, *see State v. Biddle*, 599 S.W.2d 182, 185 (Mo. banc 1980), he nonetheless found it to be a reasonable request to effectively prosecute Ingram.[1] The court made no finding on the issue raised by the motion to dismiss or enforce, nor did it find that defendant's statement was legally voluntary.

■■■■ Defendant's statement could be used in the trial on the murder charge only if he voluntarily waived his constitutional right against self-incrimination. Our Su-

---

1. There is no information in the record on the prosecution of Ingram, if there was one, or how the refusal may have hindered the prosecution. In fact, the state does not contend that defendant's refusal to take the polygraph hindered the prosecution of Ingram. In view of the fact that the result of a polygraph has not been approved as evidence it is unclear that the refusal is a breach of the agreement even as it was understood by the state. We do not reach this issue.

preme Court held in *State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976) that a confession is not admissible if given to obtain a particular agreed upon result and that result is aborted. *Id.* at 37. The court there said:

it makes no difference whether the utterances of the accused be thought of as a confession, a plea of guilty later withdrawn by leave of court, or an attempt to enter a plea of guilty upon certain promises having been made by an official. The same principles of law holding them to be inadmissible in the trial of the case apply. This is so because the promise of *leniency, if relied upon by the accused,* renders the confession involuntary in that it undercuts the accused's waiver of trial by a jury and privilege against self-incrimination, both of which are waived by a plea of guilty.

*Id.* at 35. (our emphasis).

■ The accused in a state criminal proceeding has the fundamental Fifth Amendment right not to be compelled by the state to incriminate himself. *Malloy v. Hogan*, 378 U.S. 1, 3, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). There is a presumption against a waiver of a fundamental constitutional right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). When the defendant complains that statements were made involuntarily, the state has the burden of proving the voluntariness of the confession. *State v. Hughes*, 596 S.W.2d 723, 726 (Mo. banc 1980). Confessions induced by influence of hope of leniency or hope of mitigation of punishment for crime charged, or of "worldly advantage" are not voluntary and are inadmissible in evidence. *State v. Hunter*, 456 S.W.2d 314, 316 (Mo.1970).

The state's evidence, and the reasonable inferences flowing from it, clearly supported a finding that the state intended a polygraph examination to be a part of cooperation. However, this intention was not specifically mentioned during the negotia-

tions. Detective Reinhardt testified that there was no question in his mind that the test was "included in the term full cooperation." Other relevant facts are also clear. Defendant made the agreement while handcuffed to a chair during interrogation; the polygraph was not mentioned; the request for the polygraph came after the confessional statement and was in general terms only. The extent of defendant's intellect is unknown. Reinhardt conceded he had "no way of knowing for sure if he [defendant] understood or not, [the state's interpretation of the terms of the agreement] other than based on your opinion here today."

■ We find that the state has failed to carry its burden of proving a voluntary and knowing waiver of defendant's constitutional right against self-incrimination. It offered no evidence that defendant knew or had reason to know at the time he made his statement that a polygraph test was included in the cooperation term of the agreement. What may have been routine to the state and a reasonable expectation on the part of the prosecutor and the police officer has not been shown to be of like significance to defendant. The state has neither carried its burden of proof to show voluntariness nor overcome the presumption against a knowing waiver.

The trial court assumed the agreement was as understood by the state and found defendant in default. Since the defendant defaulted the court held the state was not bound to the restriction on the use of the statement only in a robbery charge. However, the court did not make a finding or ruling on the issue of whether the statement was legally voluntary. As there was no clear and knowing waiver there was only an involuntary waiver and it was error to admit the statement which had the force of a confession.[2] It is undisputed that without defendant's interpretation of the agreement, which promised leniency, no

**2.** In *State v. Hoopes*, 534 S.W.2d 26, 37 (Mo. banc 1976) our Supreme Court noted the problem with use of these confessions. When the agreement has failed, the statements must be ignored and not brought up in trial. "To do otherwise would permit the prosecutor to make an agreement; obtain statements helpful to the prosecution pursuant to that agreement; break the agreement and yet have the full benefit of the bargain ..." *Id.* at 37.

statement would have been made. "When statements are obtained from an accused upon promises of leniency in return for a plea of guilty and the plea of guilty is aborted, the admissions obtained pursuant to the agreement" may not be used. *State v. Hoopes,* 534 S.W.2d at 37.

However, defendant is not entitled to a dismissal of the murder charge on the basis of the agreement. The defendant is entitled to a new trial on whichever charge the state wishes to prosecute. If the state chooses robbery it may use the statement because that was the defendant's reasonable expectation in giving the statement, which constitutes a waiver of the privilege against self-incrimination. If it chooses murder the statement and whatever may have flowed from it may not be used as that was not agreed and the use of such evidence would be in violation of defendant's right against self-incrimination.

Reverse and remand.

REINHARD, C.J., and CRIST, J., concur.