**STATE of Missouri,
Plaintiff-Respondent,**

v.

**David A. SANDERS,
Defendant-Appellant.**

**No. 49447.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 13, 1986.

Motion for Rehearing Denied and/or
Transfer to Supreme Court Denied
June 19, 1986.

Application to Transfer Denied
Sept. 16, 1986.

Robert A. Hampe, St. Louis, for defendant-appellant.

Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

David Sanders, appellant, was convicted of robbery first degree, Section 569.020 RSMo.1978, armed criminal action, Section 571.015.1 RSMo.1978, possession of cocaine, Section 195.020 RSMo.1978, and resisting arrest, Section 575.150 RSMo.1978, in the Circuit Court of the City of St. Louis. He was also charged with being a prior offender, Section 558.016 RSMo Cum.Supp. 1984 and at the hearing on this issue it was stipulated that on December 6, 1976, appellant pled guilty to the charge of operating a motor vehicle without the permission of the owner and was sentenced to a term of one year imprisonment. Appellant was sentenced to a term of twenty-five years for the robbery, five years for the possession of cocaine, five years for resisting arrest to run concurrently, and five years for armed criminal action, to run consecutively to the other three sentences.

On appeal appellant contends that his conviction must be overturned and he be granted a new trial because the trial court erred:

1. in overruling his motion for severance and separate trial of Counts II and

III in that the evidence on said Counts is unrelated to Counts I and IV;

2. in overruling his objections during the state's rebuttal to the showing of a videotape in its entirety, in that the tape had been played to the jury in its entirety at a prior time and constitutes improper rebuttal;

3. in denying his motion to dismiss the substitute information in lieu of indictment containing his one prior conviction in that (a) it is an attempt to amend an indictment, (b) it fails to adequately inform him of the charges against him, (c) it charges him with nothing but a prior conviction, and (d) the indictment is void and abandoned by the filing of the substitute information in lieu of indictment and its purported relation back to the indictment is of no legal force whatsoever;

4. in not permitting defendant on surrebuttal to testify as to the source of information stated on tape 2 was personal or hearsay;

5. in denying his motion to produce the informant;

6. in denying his objection to state's exhibits 32B and 32C—composite drawings—in that said exhibits were the work of the police department's artist and not the product of any work or identification by any witness but were the artist's rendition of how the perpetrator of the crime would appear without a beard;

7. in denying his motion to suppress statements in that the statement was made as part of a bargain with the state which the state violated by changing the "deal" following the giving of the statement;

8. in overruling his objections to the testimony of witness Preston concerning an initial "J" on one $20.00 bill introduced into evidence wherein she identified the initial as the handwriting of another employee in that such evidence was an opinion without a proper foundation having been laid for said testimony, where the witness was not a qualified handwriting examiner, and unqualified to render such an opinion;

9. in denying his motion to compel the assistant circuit attorney to recuse and disqualify himself as trial attorney, and to disqualify the office of the circuit attorney;

10. in denying his request for a mistrial during the state's argument where reference was made to the "deal" which caused his oral and videotaped statements to be made, in that said comments were in direct violation of the trial court's position that no evidence could or should be admitted as to what happened following the making of the second videotape and the trial court would not allow the appellant to place in evidence the facts and circumstances surrounding the breakdown of the agreement between the state and the appellant which caused him to make the oral and videotaped statements; and

11. in instructing the jury in Instruction No. 9 MAI–CR 25.02 as modified by MAI–CR 2.12—(Armed Criminal Action as Modified by Parties: Defendant Responsible for Conduct of Another Person —State's Verdict Directing Instruction) in that it placed an impermissible burden on the appellant, required no action by him, and required no intent or acting together by him and the "actor" who commits a crime with a firearm.

Appellant does not challenge the sufficiency of the evidence.

The evidence showed that on the morning of May 16, 1983, James William Davis, an employee of Security Armored Car Company made a routine pickup of money at the National Food Store, 950 Loughborough, in the City of St. Louis. Upon exiting from the store with the money he was stopped by a man with an automatic revolver who told him to stop, that this was a holdup. The robber then demanded that Mr. Davis give him the gun Mr. Davis had and the money. Mr. Davis complied with the demand. As he did so, Mr. Davis got a good look at the robber's face. As the robber backed out of the store with the

money Mr. Davis again got a good look at the robber's face. The robber dropped Mr. Davis' gun momentarily and as he leaned down to pick it up Mr. Davis again looked at the robber's face. The robber then exited the store and Mr. Davis observed him depart in a Hoover appliance van parked in front of the store.

The police and the evidence technician unit arrived at the store and photographed the crime scene. Mr. Davis described the robber to the police as a white male, in his thirties, with a dark beard and mustache, about 5'10" tall and wearing a blue windbreaker jacket. Later in the day Mr. Davis assisted a police artist in making a drawing of the robber.

Mr. Davis' receipt books showed that the appellant had taken $49,375.25 in cash, and approximately $60,000 total including checks and food stamps. The cash was marked with an employee's initial on each bundle, a common practice used by National employees.

The police also talked with a customer, Herbert Jones, who was in the National store prior to the holdup. He testified that a white bearded man wearing a blue coat was in the store looking nervously around while pretending to read a bulletin board the morning of the robbery. Mr. Jones had a good look at the man because he was standing right next to him. Mr. Jones also assisted the same police artist in drawing a picture of the man he saw in the store that day. The police artist also made modifications of three drawings to show the robber without facial hair in various stages.

On May 28, 1983, Detective McEntee of the St. Louis Police Department executed a search warrant at 6418 Wade Avenue, the residence of Dennis Thurmond, a suspect in the robbery. A Visa charge slip from a car rental agency in Los Angeles with the name of David Sanders was found.

On the same day, May 28, 1983, Officer Joseph Kriska and some other police officers executed a search warrant at 3665 Wyoming Avenue, appellant's residence. As the police car pulled up, appellant was ascending the steps. Officer Kriska ordered him to stop, and told him he was under arrest and that the police had a warrant. Appellant ran up the steps into the residence and closed the door. Officer Kriska pursued the appellant, knocked on the door and announced that he had a warrant. When no one let him in, Officer Kriska kicked the front door open, entered the residence and observed the appellant exiting the back door. Officer Kriska again ordered appellant to halt, told him he was under arrest, but appellant continued fleeing out the back door. Officer Kriska chased appellant onto the back porch after kicking open the jammed back door. Appellant was climbing up a fence. Officer Kriska again ordered him to halt and told him he was under arrest, but the appellant continued climbing the fence. Officer Kriska then fired a shot into the air but appellant continued fleeing. While doing so he dropped a small bottle out of his right hand and the bottle fell onto the patio, and Officer Kriska picked up the bottle which was filled with a white powder. Officer Kriska lost sight of the appellant after he jumped the fence.

Another police officer, Officer Beffa, who was maintaining surveillance in the rear saw appellant climb over the fence. He and another officer, Officer Hensley, who had a dog from the canine unit with him, searched the yards. Officer Hensley and the dog found the appellant hiding behind a screen door in a basement stairwell in the yard at 3635 Wyoming. Officer Hensley shined his flashlight on appellant, told him to come out and called for Officer Beffa. The officers attempted to handcuff appellant, but he resisted by pushing away and the police officers had to wrestle him to the ground. During the tussle appellant was bitten by the dog. After appellant was subdued he was taken around to the front of 3665 Wyoming where the search warrant was being executed. An ambulance was called and appellant was removed to the hospital in the custody of the police.

Officers Kriska, Scheetz, Thomas and others conducted a search of appellant's

home. Officer Thomas found two walkie-talkies, twenty-six thousand dollar bill money wrappers, a Radio-Shack cash receipt for $250.00, a National Food Store Coupon, and bookstore cash receipts from Los Angeles for $138.50 and $255.60. Officer Scheetz found a clear bag of a white powder substance and various drug paraphernalia related items including a black glass with a white powder residue, a gram scale, a funnel and other fixtures in or near a desk in a first floor office.

The bag of white powder and the small bottle of powder which appellant had dropped while climbing the fence in the backyard of 3665 Wyoming was delivered to a criminalist in the St. Louis Police Department who analyzed the powder and identified it as cocaine.

Appellant was conveyed to the First District Police Station during the early morning hours of May 29, 1983. When he was booked appellant's property was placed in an evidence envelope by the booking officer. His property consisted of $2,942.00 in cash, two rings, a necklace, a wristwatch, and two wallets. The envelope and its contents were then turned over to Detective Eichelberger, who noticed that some of the bills seized had initials written on them. Detective Eichelberger then separated the initialed bills from the unmarked bills.

When this was done Detective Eichelberger then advised appellant of his rights and asked him if he understood them. Appellant replied that he did, he did not request the service of an attorney, but made a statement. When questioned about the cash found on him at the time he was arrested, appellant denied involvement in a robbery and said the money came from the sale of a car. When told about the initials on the bills, he said he did know about the robbery and implicated a Dennis Thurmond. He then said he wanted to make a "deal."

Later that same day Mr. Davis came to the downtown women's holdover and viewed a lineup. He identified the appellant in the lineup although appellant at the time had no beard. After the lineup appellant told Detective Banahan "I am not going to jail for Dennis Thurmond. It's time to make a deal."

Subsequently that day, at about 1:00 p.m. Detective Eichelberger met again with appellant and again advised him of his Miranda rights. This time when asked about the initialled money, appellant stated that $1,500.00 was from Dennis Thurmond in repayment of a loan, and said again that he wanted to make a "deal." Detective Eichelberger and Detective McEntee both told him that they had no authority to make a "deal"; that it would have to come through the Circuit Attorney's Office. Appellant was then permitted to call his wife and a lawyer.

The officers had no contact with appellant again until late on the evening of May 31, 1983, when he requested talks with Detective Eichelberger and McEntee. Detective Eichelberger on this occasion advised the appellant that warrants had been issued; advised him of his rights and suggested he talk to a lawyer. Appellant was upset with his lawyer and did not want a public defender—"he wanted to deal," and he didn't want any lawyer. involved. He "indicated" to the police officers that he could recover Mr. Davis' gun from a sewer and show them where the checks and the paper work out of the robbery were disposed of; and he wanted to know what he needed to do to get a "deal" through the Circuit Attorney's Office.

Officer Eichelberger called Nells Moss from the Circuit Attorney's Office and Mr. Moss outlined to him what was required in order to make a "deal." Mr. Moss told Detective Eichelberger that if the appellant fully cooperated in the investigation, gave a videotaped statement, testified against anyone involved and pled guilty to the robbery, then the prosecutor would drop the drug and resisting arrest charges, reduce the bond and consider recommending probation. Appellant indicated he understood the conditions.

Appellant then made another statement. He said Dennis Thurmond approached him about the robbery and told him that he had

already stolen a few vehicles in preparation for the robbery. Appellant agreed to participate. The two made practice runs and rehearsed; they planned to take the whole armored truck.

On the day of the robbery the plans changed because a different truck was there so Thurmond went into the store and robbed the courier himself. Appellant claimed he was only the driver of the stolen van. After the robbery the two left the scene and appellant drove to an apartment complex where they transferred to a white 1964 Ford, and then later to appellant's own personal vehicle.

Appellant told the officer that his share of the proceeds of the robbery was only $8,000.00. He then directed the officers to a dumpster in the vicinity of the robbery scene where all the non-cash items were thrown and then directed them to a sewer where Mr. Davis' gun had been discarded. The sewer department was called and the gun recovered. The evidence technician unit was called to come and photograph the gun as it was being removed from the sewer, and the gun was seized.

Appellant was then taken to a fast food restaurant where he was fed and then to his home where he was permitted to talk with his wife, wash up, and change clothes. After this appellant was taken to the Television Department of the St. Louis Metropolitan Police Department where he was re-advised of his rights, completed a warning and waiver form, and again declined to have a lawyer present when he was re-advised of his rights. He then made a videotaped statement, but because the camera malfunctioned so that one could not "see any of the persons in the picture," he also made a second videotape statement which was the same as he had made in the first videotape. No threats or use of force were made at any time nor were the tapes doctored, altered, or changed in any way. James Pentz, the program director for closed circuit T.V. for the St. Louis Metropolitan Police Department, who videotaped both of these statements, retained them in his custody and produced them in court when they were introduced into evidence and played to the jury.

Later, appellant was released on bond after he had made the videotaped statements and the state entered a nolle prosequi as to the possession of cocaine and resisting arrest charges on June 3, 1983. After he refused to testify before the Grand Jury, appellant's bond was revoked on June 23, 1983, and a new bond of $200,000.00 set.

■ Appellant initially contends the trial court erred in overruling his motion for severance and separate trials of Counts II—illegal possession of cocaine—and III—resisting arrest—in that the evidence on said Counts is unrelated to Count I—robbery first degree—and IV—armed criminal action.[1]

Rule 24.07 VAMR provides:

When a defendant is charged with more than one offense in the same indictment or information, such offenses may be tried jointly or separately in the discretion of the court.

■ Our task then is to determine whether the trial court abused its discretion in denying appellant's motion to sever Counts II and III for separate trials, and if so, whether appellant has made a clear showing that he was thereby prejudiced. *State v. Allen,* 674 S.W.2d 606, 607–8[3]

---

1. Appellant attacks the joinder of the offenses in Counts II and III; however, in his motion for new trial he designated as error the denial of his motion for severance alone. There is a distinction between proper joinder of charges and severance of offenses at trial, in that the joinder of offenses rule, Rule 23.05 VAMR, deals with the more basic question of what crimes can be charged in a proceeding while severance presupposes proper joinder and is addressed to the discretion of the trial court with regard to whether prejudice may or would result if charges properly joined were tried together. *State v. Smith,* 682 S.W.2d 861, 863[1] (Mo.App. 1984). Assignments of error not raised in a motion for new trial nor in the points relied on section of the brief will not be considered on appeal. *Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973); *Anderson v. Independent Mutual Fire Ins. Co.,* 453 S.W.2d 609, 614[8–10] (Mo.App. 1970). Therefore we do not consider whether the joinder was proper under Rule 23.05.

(Mo.App.1984); In deciding whether to grant a motion to sever, the trial court weighs the benefits of trying the offenses simultaneously and thereby saving judicial time against the potential prejudice to the defendant. In assessing prejudice, the court should consider the number of offenses charged, the complexity of the evidence offered and the ability of the jury to distinguish the evidence and apply the law intelligently to each offense. *State v. Couvion,* 655 S.W.2d 80, 82[3] (Mo.App.1983).

The evidence in this case was not complex, the elements of each offense were distinct and the law with respect to each offense was adequately set out in the instructions submitted by the trial court. The jury was read MAI–CR2d 2.70 whereby the jury was instructed to consider each charge separately. We discern nothing in the record which would cause us to conclude that the jury could not apply the law intelligently to each of the offenses charged.

■ Appellant has failed to show how he was prejudiced. The evidence in support of Counts II and III covered the circumstances of appellant's arrest on May 28, 1983. Had appellant been charged for robbery and armed criminal action alone the circumstances of his arrest would have been admissible in a trial on those charges to show an attempt to resist, evade, escape or avoid arrest. *State v. Wallace,* 644 S.W.2d 382, 384[1] (Mo.App.1982). Evidence of resisting arrest is admissible because it evinces a consciousness of guilt. *State v. Valentine,* 646 S.W.2d 729, 732[9] (Mo.1983).

■ We hold that the trial court did not abuse its discretion in denying appellant's motion for severance pursuant to Rule 24.-07 and rule this point against appellant.

Appellant's next point relied on is that the trial court erred in allowing the state to play a second videotaped statement of the defendant a second time on rebuttal after it had initially been shown to the jury during the state's case-in-chief.

The state's evidence was that after appellant was taken into custody on May 28, 1983, he made two videotaped statements in which he admitted his complicity in the robbery of the courier on May 16, 1983. A second videotaped statement was made because the video portion of the first one was of very poor quality. Each was a duplicate of the other. Defense counsel cross-examined the state's witnesses in an effort to show that appellant was forced to make these statements and was tricked into making them, i.e. that they were involuntary. Appellant, in the defense's case, testified that he was threatened if he didn't make the two statements and gave these videotaped statements involuntarily. The state then, in rebuttal, played the second videotaped statement over objection. Appellant in surrebuttal played the first videotaped statement.

■ Appellant concedes that the trial court has a broad discretion in the admission of rebuttal evidence, and that while evidence which is merely cumulative to that offered in evidence during the proponent's case-in-chief is not generally admissible, it rests within the sound discretion of the trial court whether it will permit evidence which is merely repetitious and cumulative. *Parrott v. Kisco Boiler and Engineering Company,* 332 S.W.2d 41, 52[6] (Mo.App. 1960).

■ Appellant testified on direct examination that his videotaped statements were the result of "collaboration" between the police and himself in that the police told him what to say. On cross-examination he testified that all of his statements made after he'd signed and initialed a Miranda warning were involuntary and made under the direction of the police officers as part of his collaboration with them. He thereby injected into the trial the question of the voluntariness of these statements. We conclude that there was no abuse of discretion in the trial court permitting the state to play the second videotape in rebuttal to rebut appellant's claim of the involuntariness of his videotaped statements.

Appellant's third point is that the trial court erred in denying his motion to dis-

miss the substitute information in lieu of indictment containing his own prior conviction in that (a) it is an attempt to amend an indictment, (b) it fails to adequately inform him of the charges against him, (c) it charges him with nothing but a prior conviction, and (d) the indictment is void and abandoned by the filing of the substitute information in lieu of indictment and its purported relation back to the indictment is of no legal force whatever.

Reduced to it simplest terms appellant's claim is that the substitute information in lieu of indictment wherein the charges originally set out in the indictment are incorporated by reference in the substitute information in lieu of indictment is invalid and therefore the trial court had no jurisdiction to proceed to trial on the substitute information in lieu of indictment.

Respondent correctly points out that appellant's motion to dismiss made no mention of a defective indictment or substitute information in lieu of indictment and that appellant failed to file a request for a bill of particulars. Therefore, respondent argues, he has waived any objections he may have had to the substitute information in lieu of indictment.

We do not agree with appellant that the state amended the indictment; it exercised the right to substitute an information for the indictment as authorized by Rule 23.08. The substituted information did not charge an additional or different offense, nor did it affect his defense nor the evidence in the trial of the charges. The sole purpose in filing the substitute information in lieu of indictment was to bring appellant under the prior offender act, Section 558.016, RSMo Cum.Supp.1984, and permit the court rather than the jury to set the sentence upon a finding of guilt.

Rule 23.01 specifies what an indictment or information shall contain. It shall be in writing signed by the prosecuting attorney and filed in the court having jurisdiction of the offense. Rule 23.01(a). It shall "[s]tate plainly, concisely, and definitely

the essential facts constituting the offense charged." Rule 23.01(b)(2). And by Rule 23.01(d) "[a]llegations made in one count of an indictment or information may be incorporated by reference in another count." All indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by the Supreme Court shall be deemed to comply with the requirements of Rule 23.01(b). Rule 23.01(e). A copy of a document may be attached to, and incorporated in, an indictment or information, by reference. Rule 23.01(g).

■ The Supreme Court has approved a general form for pleading a prior conviction pursuant to Section 558.016,—MACH-CR 2.30,—which provides that the indictment or information will first set out the basic charge. That was not done in this instance and therefore the substitute information in lieu of indictment did not comply with the requirements of Rule 23.01(b)(2) nor MACH–CR 2.30 and is a nullity.

Appellant argues that the filing of the substitute information in lieu of indictment constituted an abandonment of the indictment and the indictment is therefore void "and its purported relation back to the indictment is of no legal force whatsoever."

We disagree. Our holding that the attempted substitute information in lieu of indictment was a nullity means that it was void and of no effect so that the indictment was neither abandoned nor was it affected in any manner whatsoever. The indictment remained in full force and effect and the trial court had jurisdiction to proceed to trial on the indictment.[2] We rule this point against appellant.

■ Appellant's next point is that the trial court erred in refusing to allow him on surrebuttal to testify to the source of the information contained in the second videotaped statement. We find no merit to this contention. What is admitted in surrebuttal is within the trial court's discretion and

**2.** Appellant has not attacked the imposition of sentence by the trial court rather than the jury;

therefore we do not consider this issue on appeal.

in the absence of new matter adduced by the prosecution in rebuttal there is no abuse of discretion in not allowing a defendant to present evidence in surrebuttal. *State v. Garrett*, 682 S.W.2d 153, 156[13] (Mo.App.1984). The playing of the second videotaped statement was not a new matter and furthermore appellant, in his case in chief, had already testified that the information recited in the videotaped statements was hearsay information, not information based upon his own personal knowledge. Such evidence would have been merely cumulative. We also rule this point against appellant.

▮ Appellant's fifth point is that the trial court erred in denying his motion to produce an informant. This Point does not comply with the requirements of Rule 30.-06(d) in that it fails to state wherein and why said ruling was erroneous, and therefore preserves nothing for review. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Therefore .we rule this Point against appellant.

˙Appellant's sixth Point is that the trial court erred in not sustaining his objections to State's Exhibits 32B and 32C on the grounds that these exhibits were "the work" of an artist for the police department and not the product of any work or identification by any witness and were the artist's rendition of how the perpetrator of the crime would appear without a beard.

Exhibits 32B and 32C were composite sketches of the robber made by a police department artist during the investigation of the robbery after he had made sketches from descriptions given to him by Mr. Davis and Mr. Jones. Exhibit 32B was a sketch of the robber with a mustache and no beard and Exhibit 32C was a sketch of the robber as he would appear clean shaven. The police artist drew these composites because:

"The different progressions of facial hair were done to depict the likeliness of the suspect involved on the contingency that he may have shaved the beard after the incident."

▮ After a careful reading of the transcript of the testimony at trial the only objection to these two sketches that we find was when these exhibits were offered into evidence by the prosecutor, at that time the following took place:

"MR. MOSS: For the record, state would move for the admission of State's Exhibit 1 through 40 into evidence with the exception of State's Exhibits 26, 27 and 28.

"MR. HAMPE: Subject to prior objections, please, and specific objections to State's Exhibits 32B and 32C which are the work of Detective Keeler as opposed to a rendition which is approved by any witness."

We have found no specific objection to these exhibits. There were none during the police artist's testimony. Defense counsel cross-examined the artist with respect to these same exhibits. We also do not find any evidence of a pre-trial motion challenging these composite drawings nor any pre-trial order with respect to these sketches by the trial judge or any other judge of the court. A trial court will not be held to have committed error for a reason not presented to it. *State v. Jones*, 594 S.W.2d 932, 938 (Mo.1980).

Composite sketches were held admissible in *State v. Shumate*, 629 S.W.2d 379, 383[2] (Mo.App.1981) over the objection that they were irrelevant to the issue of the defendant's guilt. And the use of a composite drawing, was upheld in *State v. Young*, 661 S.W.2d 637, 639[2] (Mo.App. 1983).

In the absence of a specific objection to the composite sketches employed by the state in the trial of this case we find no error and rule this point against appellant.

Appellant next contends that the trial court erred in overruling his motion to suppress statements in that they were made as part of a bargain with the state which the state violated by changing the "deal" following the giving of the statement. He admits that he "exercised free will in preparing to give a statement on videotape to the police" and that before he did so he read his rights which "were very explicit."

He argues however that he agreed to make the statement as part of a bargain with the state whereby the state would drop the drug possession and resisting arrest charges.

It is clear from the record before us that there was an evidentiary hearing on the motion to suppress; however, we have not been favored with a transcript of the testimony adduced at that hearing. However, we glean from what we do have before us that his claim is that the state changed the agreement after it was made. According to the state in return for a plea bargain the state would drop the two charges mentioned hereinabove, reduce his bond, and *consider* recommending probation instead of jail. In return, appellant would have to (1) fully and completely cooperate in the investigation of the robbery; (2) make a videotaped statement; (3) testify against all persons involved in *all* court proceedings; and (4) plead guilty to the robbery.

The state upheld its part of the bargain by having appellant's bond reduced and entering a nolle prosequi in the possession of cocaine and resisting arrest charges. However, on June 21, 1983, appellant refused to appear and testify against Dennis Thurmond before the Grand Jury as promised. As a result, the state moved to increase the bond and resumed prosecution against appellant on the possession of cocaine and resisting arrest charges.

The record demonstrates that it was appellant, not the state, who initiated the negotiations in this case. It was he who requested the police officers to contact the Circuit Attorney's Office to see if a "deal" could be worked out so he could tell them what he knew. He was the one who did not keep his end of the bargain, not the Circuit Attorney's Office.

Appellant relies on *State v. Chatman,* 682 S.W.2d 82 (Mo.App.1984) and *State v. Hoopes,* 534 S.W.2d 26 (Mo. banc 1976). Those cases are distinguishable and are not, in our opinion, controlling here, because in *Chatman* and *Hoopes* it was the state that either reneged on the deal or required something of the defendant which was not a part of the original deal.

In *Chatman* the state failed to mention specifically during plea bargaining that a polygraph examination was included in the term "full cooperation" and the defendant had no reason to believe the taking of a polygraph examination was included in that term. When the defendant refused to take the polygraph examination the state refused to go through with the plea bargain.

In *Hoopes* the state aborted a written committment to a plea of guilty filed in court by simply refusing to abide by the plea bargain.

In the case sub judice it was the appellant who refused to carry out the plea bargain and, although we were not furnished the transcript of evidence at the hearing on appellant's motion to suppress his statements nor court order denying said motion, we are made aware of the fact that the trial judge presiding at the hearing on the motion to suppress found that the statements were voluntarily and knowingly made. Therefore we hold that there is no merit to appellant's contention and that the trial court did not err.

Appellant contends that the trial court erred in not sustaining his objection to the testimony of Ms. Jill Preston concerning an initial "J" on a $20.00 bill admitted into evidence in that such evidence was without foundation and Ms. Preston was not qualified as a handwriting expert and unqualified to give an opinion as to the author of any writing.

Jeanne Krug, a checker at the National Food Store, testified that it was her common practice in the regular course of business for the last three or four years to make a "J" on the bundles of money she counted prior to putting the bundles in the safe to show that she had counted the money. She identified a "J" on a $20.00 bill as being similar to the "J" she made on money she had bundled and put in the safe.

Ms. Preston then testified, over appellant's objection that she was not qualified as a handwriting expert, that she was a

cashier in customer service at the same store as Ms. Krug; that she worked with Ms. Krug two times a week; that she had observed her mark bundles of money over a period of three or four years; that Ms. Krug initialed these bundles of money with a "J"; and that in her opinion the "J" on the $20.00 bill looked like Ms. Krug's initial.

In Missouri no particular expertise is required in order to form an opinion of handwriting. *State v. Boyington*, 544 S.W.2d 300, 305[10] (Mo.App.1976). Opinion evidence as to handwriting is not wholly without foundation merely because the witness did not see the letters signed and was not a handwriting expert. *Schaefer v. U.S.*, 265 F.2d 750, 754[8] (8th Cir.1959). Substantial proof that a signature is genuine may be made by the testimony of one who knows the handwriting and signature of the writer. *McLendon v. Leighty*, 320 S.W.2d 735, 737[5] (Mo.App.1959). Under the rule long established and universally applied a showing that the witness was personally acquainted with the person and had seen him write his name a number of times is sufficient to establish the competency of the witness to give an opinion whether the signature is in the handwriting of that person, and the weight to be given the testimony is a question for the jury. *State v. Kennedy*, 108 S.W.2d 384, 387[2] (Mo.1937). "In theory any person able to read and write is sufficiently qualified as to *expert capacity*, to form an opinion of handwriting ..." *State v. Boyington*, supra, 544 S.W.2d at p. 305, citing III Wigmore on Evidence, Section 708 at 40 (Chadbourn Rev.1970). The court in *Woitte v. U.S.*, 19 F.2d 506, 509 (9th Cir.1927) said that it is settled everywhere that if a person has seen another write his name but once that person can testify as to an opinion whether the handwriting is that of the defendant.

The evidence in this case was that Ms. Preston worked with Ms. Krug two days a week over a three or four year period and she saw Ms. Krug mark the money she'd counted and bundled with her initial "J" several times a month. We conclude that under the authorities she was competent to render an opinion whether the "J" on the $20.00 bill was Ms. Krug's initial placed on the bill by Ms. Krug.

Although we are here dealing with a single initial and not a full signature we point out that *Woitte v. U.S.*, supra, involved two initials "J.W.", which a bank clerk testified was in the defendant's writing. We hold that the trial court did not err in permitting Ms. Preston to give her opinion that the initial "J" on the $20.00 bill was Ms. Krug's and rule this point against appellant.

Appellant's next Point Relied On is that the trial court erred in failing and refusing to sustain his motion to compel the Assistant Circuit Attorney to recuse and disqualify himself as the trial attorney, to disqualify the office of Circuit Attorney, and to request appointment and designation of the state's trial attorney from the private bar. This point fails to specify wherein and why this alleged action or ruling of the trial court are claimed to be erroneous, is only an abstract statement, and therefore preserves nothing for review. Rule 30.06(d). Furthermore, since appellant did not call the Assistant Circuit Attorney as a witness, although he had endorsed him as a witness, we believe this point is controlled by *State v. Gilmore*, 681 S.W.2d 934, 943[27] (Mo. banc 1984), and rule it against appellant.

Appellant's next point, as best we can decipher it, is directed at the failure of the trial court to grant his two mistrial motions made during the state's closing argument. This lengthy, rambling point does not comply with Rule 30.06(d) which dictates that the points relied on "shall state briefly and concisely" the actions or rulings of the court which are sought to be reviewed.

Despite this non-compliance, we shall review this point as we understand it. Appellant claims that the Assistant Circuit Attorney twice made improper references to a "deal" in closing argument when he was not allowed to show circumstances after the "deal" was made.

A trial court has broad discretion in the control of closing argument, with wide latitude accorded counsel in their summations and a conviction will be reversed for improper argument only where it is established that the complained of argument had a decisive effect on the jury's determination. *State v. Newlon,* 627 S.W.2d 606, 616[12, 13] (Mo. banc 1982), cert. denied 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, rehearing denied 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520.

Earlier during the course of the trial a clerk of the court testified without objection from the court records that appellant's bond was modified and the court record reflected that the defendant had refused to testify before the grand jury as an allegation in support of the state's motion to increase the defendant's bond. The argument of the Assistant Circuit Attorney referred to matters in evidence admitted without objection and therefore was not improper. *State v. Holt,* 660 S.W.2d 735, 738[8] (Mo.App.1983).

Appellant's final point relied on is that the trial court erred in submitting to the jury Instruction No. 9 in that (a) it placed an impermissible burden on him; (b) required no action by the defendant; and (c) "required no intent or acting together by the defendant and the 'actor' who commits a crime with a firearm."

Instruction No. 9 was the verdict-director instruction—MAI–CR2d 25.02 as modified with MAI–CR2d 2.12—on the armed criminal action count.[3]

The trial court correctly applied the MAI–CR instructions, and this court will not find error where the trial court follows the mandates of the MAI–CR. *State v. Randolph,* 698 S.W.2d 535, 542[14] (Mo. App.1985).

The points not preserved for review have not been considered as "plain error" under Rule 30.20 because we are of the opinion there is no manifest injustice or miscarriage of justice in this case.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.

---

3. A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that the defendant is guilty under Count I of robbery in the first degree, and

Second, that the defendant or another person committed that offense by, with or through the use, assistance or aid of a deadly weapon, then you are instructed that the offense of armed criminal action has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of armed criminal action, the defendant acted together with or aided another person in committing that offense, then you must find the defendant guilty under Count IV of armed criminal action.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.